In re the MARRIAGE OF Kelvin FORD and Sonia Ford.

Upon the Petition of

Kelvin Ford, Appellee,

And Concerning

Sonia Ford, Appellant.

No. 96–779.

Supreme Court of Iowa.

May 21, 1997.

Craig H. Lane, Sioux City, for appellant.

Elizabeth A. Rosenbaum, Sioux City, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

SNELL, Justice.

Sonia Ford appeals the custody determination by the district court. She claims that past domestic abuse incidents by her husband, Kelvin Ford, outweigh all other factors in considering a custody award. The district court awarded joint custody with Kelvin having primary physical care of the children. We affirm.

## I. Background Facts and Proceedings

Sonia and Kelvin Ford began living together in 1984, shortly after Sonia graduated from high school. They had their first child, Danny, in October of 1984, and a second, Shannell, in 1987, before marrying in 1988. A third child, Derrick, was born in 1989. Throughout their cohabitation and subsequent marriage, the family resided in a home owned by Sonia's mother. Their union, marked by incidents of violence and substance abuse by both parties, steadily deteriorated. Sonia moved out of the family home in January 1995 to move in with her boyfriend, leaving Kelvin with the children. Kelvin filed a petition for dissolution of marriage in May 1995. A hearing was held on June 30, 1995, after which Kelvin was granted temporary custody of the three children. Sonia was ordered to pay monthly child support and was granted liberal visitation rights.

Following a hearing, the district court found both parties have "the necessary parental qualities and skills to adequately care for the children." The court noted that the "determinative factor" in its custody decision was "the stability of each parent over the past fifteen months." It found that Kelvin "is the parent who is providing for [the children's] basic needs and that he will be there in the morning when they wake up." Accordingly, the court awarded primary physical care of the children to Kelvin and substantial visitation rights to Sonia.

The final judgment and decree of dissolution was entered on April 11, 1996, in which the court awarded joint custody. Kelvin was awarded the primary physical care of the children and Sonia was granted substantial visitation rights. The court furthered ordered that Sonia pay child support in the amount of $385.00 per month. It is from this order that Sonia appeals.

## II. Standard of Review

Dissolutions of marriage are equitable proceedings and our review is de novo.

Iowa. R.App. P. 4; Iowa Code § 598.3 (1995). Our review of a custody order is also de novo and our primary consideration is the best interests of the children. *In re Marriage of Kleist,* 538 N.W.2d 273, 276 (Iowa 1995); *In re Guardianship of Knell,* 537 N.W.2d 778, 780 (Iowa 1995). In assessing a custody order, we give considerable weight to the judgment of the district court, which has had the benefit of hearing and observing the parties first-hand. *Kleist,* 538 N.W.2d at 278.

### III. Issues on Appeal

#### A. Section 598.41

Sonia argues that the district court erred in determining that it is in the best interests of the Ford children to award Kelvin their physical care. She contends that the district court, in its order, failed to give appropriate weight to the domestic abuse allegations and did not apply the amended provisions of section 598.41 as they relate to evidence of domestic abuse. We disagree.

■ Section 598.41(3) of the Iowa Code, as amended in 1995, lists ten factors for courts *to weigh in considering what is in the best interests of the children.* *See* Iowa Code § 598.41(3)(a)–(j) (Supp.1995). Additionally, courts consider other factors when resolving primary care decisions, as outlined by our decision in *In re Marriage of Winter,* 223 N.W.2d 165, 166–67 (Iowa 1974). The critical issue to determine is which parent will do the better job in raising the children. *In re Marriage of Wilson,* 532 N.W.2d 493, 495 (Iowa App.1995); *In re Marriage of Brainard,* 523 N.W.2d 611, 614 (Iowa App.1994).

Both parties offer testimony in support of their respective claims that each is better fit to be the primary caretaker of the children and that awarding primary custody to the other would not be in the children's best interests. In support of her claim, Sonia contends that the history of domestic abuse by Kelvin is determinative of the custody issue. She points to the recent statutory amendments that dictate the significance of domestic abuse in custody decisions. Section 598.41 provides:

1. a. The court, insofar as is reasonable and in the best interests of the child, shall order the custody award, including liberal visitation rights where appropriate, which will assure the child the opportunity for the maximum continuing physical and emotional contact with both parents after the parents have separated or dissolved the marriage, and which will encourage the parents to share the rights and responsibilities of raising the child unless direct physical harm or significant emotional harm to the child, other children, or parent is likely to result from such contact with one parent.

Iowa Code § 598.41(1)(a).

The 1995 amendments reflect concern with domestic abuse by adding, inter alia, the following subsections:

1. b. Notwithstanding paragraph "a," if the court finds that a history of domestic abuse exists, a rebuttable presumption against the awarding of joint custody exists.

. . . .

[2.]c. A finding by the court that a history of domestic abuse exists, as specified in subsection 3, paragraph "j," which is not rebutted, shall outweigh consideration of any other factor specified in subsection 3 in the determination of the awarding of custody under this subsection.

*Id.* § 598.41(1)(b), (2)(c).

Section 598.41(3) states:

In considering what custody arrangement . . . is in the best interest of the minor child, the court shall consider the following factors:

. . . .

j. Whether a history of domestic abuse, as defined in section 236.2, exists. In determining whether a history of domestic abuse exists, the court's consideration shall include, but is not limited to, commencement of an action pursuant to section 236.3, the issuance of a protective order against the parent or the issuance of a court order or consent agreement pursuant to section 236.5, the issuance of an emergency order pursuant to section 236.6, the holding of a parent in contempt pursuant

to section 236.8, the response of a peace officer to the scene of alleged domestic abuse or the arrest of a parent following response to a report of alleged domestic abuse, or a conviction for domestic abuse assault pursuant to section 708.2A.

*Id.* § 598.41(3)(j).

Section 236.2 defines domestic abuse as an assault "[b]etween persons who are parents of the same minor child, regardless of whether they have been married or have lived together at any time." *See id.* § 236.2(c).

■ The record provides some support for Sonia's assertion that the district court either was not aware of the 1995 amendments to section 598.41 or did not apply them. For instance, in the transcripts of the initial hearings, the court referred to the "nine factors" under section 598.41, whereas after the 1995 amendments, there are now ten. *See id.* § 598.41(3)(a)–(j). The court also failed to discuss the significance of the evidence creating a rebuttable presumption against joint custody. *See id.* § 598.41(1)(b). These omissions, however, are not fatal under our de novo review. The record makes clear that the court gave careful thought to the domestic abuse issue and found that it was not significant enough to be the sole factor in determining custody of the children.

The fact that the court did not specifically state it was following the new sections of the Code does not necessarily mean that it did not properly weigh the evidence. In its initial order granting temporary joint custody and physical care to Kelvin, the district court considered the domestic abuse evidence, stating that "While there is evidence of some physical abuse or threats on the Petitioner's part in the past, he appears to have avoided such misbehavior in recent times." In its final judgment and decree of dissolution, the court weighed other factors in determining which parent should be awarded physical care. It noted that "the stability of each party over the past 15 months may be the differentiating factor between the parties" and "[t]he most recent activity of the parties, say, perhaps the last 28 months should carry more weight than activity by each of the parties committed five to eight years ago." The district court's analysis is consistent with our determination that the presumption against awarding joint custody due to the evidence of domestic abuse was sufficiently rebutted by Kelvin.

**B. Rebuttable Presumption Against Awarding Joint Custody**

■ Sonia argues that under the amended language of section 598.41, evidence of domestic abuse essentially trumps any and all other factors that the court can consider in making custody determinations. We note, however, that evidence of domestic abuse merely creates a *rebuttable* presumption against joint custody. *See id.* § 598.41(1)(b), (2)(c). Thus, we must consider the evidence of domestic abuse, under the standard and scope of review as enunciated above, in determining if the presumption is rebutted and accordingly, whether that one factor should be determinative.

Clearly there is evidence of domestic abuse as contemplated in section 598.41 of the Code. Kelvin admitted to striking Sonia with an "open hand" four years ago, and that he had assaulted her while they were living together, albeit prior to their marriage. Sonia testified that she was abused "weekly" up until four years before the dissolution. Kelvin also admitted that the police removed him from the house and arrested him in 1991 for a domestic abuse incident. Each of these incidents is evidence of domestic abuse and establishes a rebuttable presumption against the awarding of joint custody. Both parties agree, however, that there have been no incidents of domestic abuse since 1991.

Because the operation of section 598.41(1)(b) creates a rebuttable presumption, however, our next consideration is whether this presumption is sufficient to preclude the awarding of joint custody. Any evidence of domestic abuse does not, as Sonia contends it does, automatically and as a matter of law preclude joint custody. Rather, we must consider the evidence in determining whether such a presumption is sustainable.

It is undisputed that the last incident of domestic abuse occurred over four years ago. Kelvin has acknowledged this abuse and

states that he has taken steps to deal with it. He provided credible testimony that he sought the support of his family and church in correcting his problem. Additionally, the record indicates that Kelvin has overcome his drug and alcohol dependency, dependencies that he admits contributed to his violence. The fact that Kelvin never attended a formal treatment program does not necessarily mean that he has not overcome his problem. He has subsequently received his college degree, has full-time employment, and has become an active member of his church. Testimony was adduced by church friends and family that Kelvin has matured and has improved in these areas of his life. His testimony certainly convinced the district court and suggests to us that the domestic abuse is no longer a problem. Accordingly, we find that, in this case, the presumption against awarding custody to an abusive spouse has been successfully rebutted.

### C. Absence from the Home

■ Sonia also contends that the court improperly penalized her for her absence from the home for almost all of 1995. In its order, the court noted that

> [Sonia's] actions of the last 15 months are not a picture of stability and are somewhat inconsistent with a mother who states she would do anything for her children. The court is primarily concerned about the length of time that she was absent from the home, even though it is apparent that she had almost daily contact after school with each of the children. The court can understand that a person in an abusive relationship may come to the point of having to physically leave for a period of 30 to 90 days to obtain professional assistance and to be able to then assert herself in such a relationship. However, in this instance, we are talking about a departure from January to December of 1995.

Although certainly absence from the home is a factor that may be taken into consideration in custody determinations, *see id.* § 598.41(3)(d), Sonia contends that the district court ignored the newly amended section of the Code which states as follows:

> d. If a history of domestic abuse exists as determined by a court pursuant to subsection 3, paragraph "j," and if a parent who is a victim of such domestic abuse relocates or is absent from the home based upon the fear of or actual acts or threats of domestic abuse perpetrated by the other parent, the court shall not consider the relocation or absence of that parent as a factor against that parent in the awarding of custody or visitation.

*Id.* § 598.41(1)(d).

The record indicates that the court considered her absence from the home to be a significant factor, but we are not convinced that the district court improperly gave it too much weight in deciding custody in Kelvin's favor. The court determined that the reasons for Sonia's departure may not have been entirely related to the incidents of domestic abuse in the past. It noted that Sonia left the home to move in with her boyfriend and that in her testimony, she was unable to express a reason for leaving the home for such a long period of time. In fact, the record indicates that her departure occurred four years after the last incident of abuse and does not support her assertion that she left out of fear of further abuse. Thus, the district court did not violate section 598.41(1)(d) by considering her absence when it does not appear that Sonia's departure was "based upon fear of or actual acts or threats of domestic abuse."

### D. Custody Determination

■ Having determined that the evidence of domestic abuse does not trump the other statutory and common law factors, we find that the district court correctly awarded joint custody of the children, with Kelvin as their primary caretaker. Kelvin has been the primary caretaker in the home since January 1995 and expressed his close relationship with the children and his ability and interest to continue their care. Kelvin testified that he has not used drugs for seven years and has not drunk alcohol in six years. Friends and neighbors also testified favorably on Kelvin's abilities as a parent. We also agree that Sonia's lifestyle has been significantly less stable. Giving proper deference to the

district court's findings on the credibility and weight of the evidence presented, we find that Kelvin is better suited at this point to provide for the best interests of the children. Certainly it is important to the Ford children's development and well-being that Sonia remain involved in their lives and the awarding of joint custody, coupled with substantial visitation rights, furthers these objectives.

The record supports the district court's determination that it is in the best interests of the Ford children to award joint custody. We agree with the court that Kelvin should be the primary caretaker and that Sonia be required to pay monthly child support. Both parties are responsible for their own attorney fees.

The judgment of the district court is affirmed.

**AFFIRMED.**