**IN THE COURT OF APPEALS OF IOWA**

No. 14-0731
Filed October 29, 2014

**SARA L. SWAFFORD f/k/a SARA L. GERST,**
        Plaintiff-Appellant,

**vs.**

**DONALD W. JOHNSON III,**
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Louisa County, Cynthia H.

Danielson, Judge.


        Sara Swafford appeals the district court's grant of primary physical care of

the parties' minor child to Donald Johnson.  **AFFIRMED.**



        Andrew B. Howie of Hudson, Mallaney, Shindler & Anderson, P.C., West

Des Moines, for appellant.

        Stephanie L. Kozowski of Swanson, Gordon, Benne, Clark & Kozlowski,

L.L.L.P., Burlington, for appellee.


        Considered by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.

**VOGEL, P.J.**

Sara Swafford appeals the district court's grant of physical care of the parties' minor child, K.J., to Donald Johnson. She asserts placing K.J. in her care would serve the child's best interest. Faced with a difficult decision, the district court properly found that, though both parties are "loving, caring and suitable parents," the factors weigh in favor of granting physical care to Donald. We agree and affirm.

K.J. was born in May 2009. Sara and Donald resided together more or less continuously from 2007 until April 2011, though they were never married. Donald lives in Carlisle, Iowa, and both parties lived together in Des Moines or Carlisle until they ended their relationship. Donald's family also lives in the Des Moines-Carlisle area.

Prior to K.J.'s birth, the parties were not financially stable and spent a great deal of time drinking at bars. Due to financial difficulties they were unable to pay the rent and consequently lost their apartment. Donald was arrested for public intoxication in 2007, which was a probation violation from a 2005 conviction for criminal mischief. He served nine days in jail, after which he became very religious and began to attend church regularly. Donald's decision to make better choices was also facilitated by the fact Sara discovered she was pregnant with K.J. Donald has had no convictions following the 2007 arrest.[1]

---

[1] In June 2013, Donald was charged with child endangerment. He testified he was babysitting for a neighbor, who then accused him of leaving a bruise on her child. He denied this occurred, stating the mother was being investigated by the Department of Human Services. He also testified that Sara did not believe Donald to be capable of hurting a child and she had offered to testify on his behalf. Donald stated his attorney informed him he was confident the charge would be dismissed. In its ruling, the district

Donald found steady employment with the ironworkers union in 2010, which, according to the district court, "pays well and has good benefits." His normal work week is Monday through Friday from 7:00 a.m. to 3:30 p.m., with seasonal unemployment. Both parties ceased drinking regularly and are now much more financially stable.

The parties moved in with Donald's mother during Sara's pregnancy. In August 2010, they moved into a mobile home, purchased by Sara's father with the title in both her name and her father's name. Donald currently lives in the mobile home and is responsible for paying the lot fee, mortgage, and taxes.

Following K.J.'s birth, Sara was his primary caretaker. As the district court noted:

> When [K.J.] was young, Don did not really understand how to deal with an infant or toddler. He took normal toddler behavior personally and did not know how to deal with his crying and other normal infant behavior. As [K.J.] became older and Don a more experienced parent, this no longer was an issue.

After Donald engaged in inappropriate texting with another woman, Sara ended the relationship. Originally from Wapello, Iowa—where all of her family resides—Sara moved back to Wapello in April 2011. She obtained a full-time job with Hope Haven working with the mentally disabled as a support professional, earning $11.36 hourly. Her hours are from 8:00 a.m. to 4:00 p.m. Monday through Friday. In October 2012, she moved in with her boyfriend, Jerry, then married him in October 2013. She and Jerry live in a three-bedroom house in rural Wapello. Jerry has two children, ages ten and thirteen at the time of trial.

---

court made no mention of this charge. Sara received a deferred judgment for operating while intoxicated in 2006.

They reside with him every other weekend and he pays child support.[2] Jerry is employed full time at a steel company near the Quad Cities.

Sara also has an eleven-year-old daughter, who was born in December 2002, when Sara was sixteen and still living at home. The daughter has resided in Sara's parents' home since her birth, although since Sara moved back to Wapello in 2011, her daughter has spent time at both residences. Sara's mother testified she and her husband have been the girl's legal guardians since she was approximately three years old; however, the record reveals the letters of appointment were issued in 2007. Sara's parents also pay for their granddaughter's expenses, cover her insurance, and claim her as a dependent on their income tax returns.

Additionally, Sara testified her daughter has never had a good relationship with Donald. She stated that when she moved to Des Moines in 2007 and her daughter was only five, she "caused a huge strain, because I wanted my daughter, and I couldn't have my daughter being with him and their relationship." Consequently, Sara's daughter continued to live with Sara's parents in Wapello.

In 2011, when Donald and Sara separated, they agreed to and successfully implemented joint physical care of K.J. However, they understood that, because K.J. will enter kindergarten soon, and the distance between the two homes would make shared care in alternating weeks impossible, one parent

---

[2] Jerry has two criminal convictions, one for operating while intoxicated in 2006 and another for failure to pay child support in 2005 or 2006. Testimony also reflected that he wrote a bad check and drove while his license was suspended. Additionally, the mother of his oldest child is currently incarcerated, and the child resides full-time with the maternal grandmother. The record does not explain why the child does not reside with Jerry.

needed to have physical care.  Consequently, on December 21, 2012, Sara filed a petition requesting physical care be placed with her, or alternatively, that the court order shared physical care.  Donald answered that he should have physical care, or in the alternative, shared physical care of K.J.  On March 15, the parties stipulated to temporary matters, which included a shared care arrangement with a visitation schedule.

A trial was held on December 17 and 18, 2013, and on April 9, 2014, the district court ordered joint legal custody of K.J., and granted Donald physical care.  The court also established Sara's visitation rights, her child support obligation, how the parties would facilitate transportation, when each party would claim K.J. as a dependent for tax purposes, and how to determine where K.J. would attend school.  The court also denied each party's request for attorney fees.  Sara appeals the court's physical care determination.

We review custody determinations de novo.  *In re Marriage of Winters*, 223 N.W.2d 165, 166 (Iowa 1974).  Though we give weight to the factual findings of the district court, we are not bound by them.  *Id.*  However, when determining the credibility of witnesses, we give deference to the court "because the district court had an opportunity to view, firsthand, the demeanor of the parties and evaluate them as custodians."  *In re Marriage of Walton*, 577 N.W.2d 869, 871 (Iowa Ct. App. 1998).

Because the parties have agreed to joint legal custody, the only issue in this case is who will be the physical care giver.  The controlling consideration in child custody issues is the best interests of the child.  *In re Marriage of Ford*, 563 N.W.2d 629, 631 (Iowa 1997).  We determine placement according to which

parent can minister more effectively to the child's long-range best interests. *In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). The objective is to place the child in the environment most likely to bring the child to healthy physical, mental, and social maturity. *In re Marriage of Murphy*, 592 N.W.2d 681, 683 (Iowa 1999). In a custody case, our legal analysis is the same regardless of whether or not the parents have ever been married. *Lambert v. Everist*, 418 N.W.2d 40, 42 (Iowa 1988).

We agree with the district court's statement that:

> The record in this case reflects that Sara and Don have consistently worked together to foster the relationship between [K.J.] and both parents. They have promoted maximum contact between [K.J.] and both parents during the pendency of this action. This is not to say that there have not been bumps in the road but on the whole both have proven themselves to be suitable to serve as primary physical caretaker.

The parties have clearly taken excellent care of K.J., who is in good health, involved in sports, and is otherwise a happy, well-adjusted child. Both Sara and Donald testified regarding their commitment in maintaining a strong relationship between K.J. and the other parent. They have proven this by their past shared care arrangement and in their ability to communicate with each other regarding K.J.'s needs and welfare.

The district court, in granting physical care to Donald, noted the joint physical care arrangement was not practical, due to the distance between Wapello and Des Moines. The court then stated:

> With [the exception of not watching K.J. continuously while at softball practice], Don has displayed, over the past two and one-half years an ongoing commitment and stability in his home and life that Sara still lacks. The Court agrees with her father that she has improved 100 percent in her parenting since [her daughter's] birth

and is hopeful that her current marriage, job, and living situation will allow her to continue on that path. However, the Court must determine [K.J.'s] long-range best interest now. Neither Sara nor Jerry have shown the necessary long-term stability and parenting skills needed for the Court to conclude that their current situation will continue unaltered and serve [K.J.'s] best interests. There is no concern as to [K.J.'s] physical well-being, his loving relationship and care by his mother and his close ties to his extended family in Wapello. As the Court noted at the completion of trial, this case has presented a difficult question of how to act in [K.J.'s] best interests when faced with two loving, caring and suitable parents. Ultimately, the Court has reached its decision based upon what it believes to be the more proven record of stability and concludes that it is in [K.J.'s] best interests to award primary physical care to Don.

The record supports the district court's determination. Both parents would be well suited to be K.J.'s physical caretaker. However, Sara chose to leave her then-five-year-old daughter in the care of her parents when she moved to Des Moines to be with Donald in 2007. Then, after several years and the birth of K.J., Sara returned to Wapello; however, she still does not have custody of her daughter, as she chose to move in—and then marry—Jerry. She did this in spite of the fact her daughter does not want to be at the house if Jerry is present. Nonetheless, Sara testified her daughter was "number one" in her life. The district court clearly had concerns regarding Sara's instability and her choice to put her relationships with Donald and now Jerry ahead of her relationship with her daughter. The past conduct of a parent can be "indicative of the quality of the future care that parent is capable of providing." *See In re Marriage of Winnike*, 497 N.W.2d 170, 174 (Iowa Ct. App. 1992). While Sara's parenting skills have improved considerably since her daughter's birth, her choices have not demonstrated sufficient stability for the district court to have confidence in placing K.J. in her physical care.

Alternatively, Donald has demonstrated greater maturity and stability in his life. He also has flexibility with regard to the hours he works if there is an emergency, as well as a support system in the form of his many family members, who also reside in the Des Moines-Carlisle area. Consequently, the district court concluded it is in K.J.'s "long-term best interests" for Donald to be granted physical care. *See In re Marriage of Vrban*, 359 N.W.2d 420, 424 (Iowa 1984). While we agree either parent could provide for K.J., we defer to the district court's in-court assessment of the parties, given the record supports its conclusion. Therefore, we affirm the order placing K.J. in Donald's physical care.

**AFFIRMED.**