## IN THE COURT OF APPEALS OF IOWA

No. 15-0460
Filed August 17, 2016

**CHRISTOPHER FORTNER,**
        Petitioner-Appellee,

**vs.**

**STEPHANIE HOWE,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Linn County, Sean W. McPartland,
Judge.

        Appellant appeals the district court's ruling in this custody action awarding
appellee joint legal custody of their child, claiming the court failed to apply the
appropriate statutory analysis regarding domestic abuse in determining legal
custody; requests modification of the provisions of the decree establishing
visitation transportation, and in assessing court costs.  **AFFIRMED IN PART,
MODIFIED IN PART, AND REMANDED FOR ENTRY OF ORDER ON COURT
COSTS.**

        Anne M. Laverty of Mullin & Laverty, L.C., Cedar Rapids, for appellant.

        Christopher A. Fortner, Cedar Rapids, appellee pro se.

        Considered by Mullins, P.J., McDonald, J., and Blane, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**BLANE, Senior Judge.**

Respondent/appellant Stephanie Howe appeals the district court's ruling awarding petitioner/appellee Chris Fortner joint legal custody of their child, J.E.H. Respondent claims the district court failed to apply the appropriate statutory analysis regarding domestic abuse in determining legal custody. She also requests modification of the provisions of the decree establishing visitation transportation and assessing court costs. Based upon our de novo review of the record and the district court's thorough decree, we find the judgment should be affirmed as to the joint legal custody and modified as to the assessment of court costs.

## I. Standard of Review

We review district court decisions regarding child custody de novo. Iowa R. App. P. 6.907; *McKee v. Dicus,* 785 N.W.2d 733, 736 (Iowa Ct. App. 2010). We are not bound by the district court's fact findings. *Id.* However, because the district court has the opportunity to listen to and observe the parties and witnesses, we give weight to those fact findings, especially those concerning witness credibility. *Id.* Our overriding consideration is the child's best interests. *Id.* We base our decision on the unique circumstances of each case. *See In re Marriage of Crotty,* 584 N.W.2d 714, 717 (Iowa Ct. App. 1998).

In making custody determinations, we apply the criteria found in Iowa Code section 598.41 (2013). *See* Iowa Code § 600B.40. Our objective is to place the child in the environment most likely to promote a healthy physical, mental, and social maturity. *In re Marriage of Hansen,* 733 N.W.2d 683, 695 (Iowa 2007). The court must fashion a child-custody arrangement that will afford

"the opportunity for the maximum continuing physical and emotional contact with both parents" and "will encourage parents to share the rights and responsibilities of raising the child unless direct physical harm or significant emotional harm to the child, other children, or a parent is likely to result from such contact with one parent." Iowa Code § 598.41(1)(a); *see also In re Marriage of Gensley*, 777 N.W.2d 705, 714 (Iowa Ct. App. 2009).

## II. Trial Court Determination

Following a trial, the court awarded the parties joint legal custody of their minor child, J.E.H., born 2011. Stephanie was granted physical care of J.E.H. subject to a visitation schedule jointly submitted by the parties. Chris was ordered to pay child support of ninety-nine dollars per month. Stephanie was ordered to pay all court costs, except for Chris's court-appointed attorney fees in connection with contempt matters.

## III. Joint Legal Custody

The district court made a finding that Chris abused Stephanie during their relationship. We find such conclusion supported in the record and need not repeat the factual basis here. The trial court awarded Stephanie physical care, but despite the finding of domestic abuse, awarded joint legal custody to Stephanie and Chris. Stephanie, citing Iowa Code section 598.41,[1] contends the

---

[1] Iowa Code section 598.41 is made applicable here by Iowa Code section 600B.40:
> In determining the visitation or custody arrangements of a child born out of wedlock, if a judgment of paternity is entered and the mother of the child has not been awarded sole custody, section 598.41 shall apply to the determination, as applicable, and the court shall consider the factors specified in section 598.41, subsection 3, including but not limited to the factor related to a parent's history of domestic abuse.

trial court failed to apply the statutory analysis required once a history of domestic abuse is found. Further, she claims that if a proper analysis were conducted, the presumption against joint legal custody would not be rebutted and the statute would require an award of sole legal custody to her.

The district court decree in this regard provided:

> In the best interests of the minor child here, the Court finds that joint legal custody is appropriate. Despite the fact that there is some history of domestic abuse in this matter, the parties each have participated constructively in the care of J.E.H., including in connection with her medical issues. Each of the parties clearly loves J.E.H. and J.E.H. clearly has bonded with each of her parents. As noted above, the Court finds that the undisputed evidence establishes that both parties have been supportive of J.E.H.'s relationship with the other parent; both parties acknowledge that the other party is a good parent to J.E.H.; and both parties acknowledged that it is important that J.E.H. continues to have a relationship with both parties. In the circumstances here, the Court finds and concludes that it would not be in J.E.H.'s best interest, and indeed would be a disservice to J.E.H., to conclude that joint custody is not reasonable and not in the best interests to the extent that the legal custodial relationship between J.E.H. and Chris should be severed.

Stephanie argues that the trial court did not specifically address the evidence that rebutted the presumption created by the finding of domestic abuse.

Even though the court may award joint custody under paragraph "a", section 598.41(1)(b) provides, "Notwithstanding paragraph 'a,' if the court finds that a history of domestic abuse exists, a rebuttable presumption against the awarding of joint custody exists." "A finding by the court that a history of domestic abuse exists, as specified in subsection 3, paragraph 'j,' which is not rebutted, shall outweigh consideration of any other factor specified in subsection 3 in the determination of the awarding of custody under this subsection." Iowa Code § 598.41(2)(c). In considering what custody arrangement under subsection

2 is in the best interest of the minor child, the court shall consider the factors set forth in Iowa Code section 598.41(3)(a)–(k).

Our Iowa Supreme Court addressed the trial court's implementation of these code provisions in the case of *In re Marriage of Ford*, 563 N.W.2d 629 (Iowa 1997). In that case the appellant also contended that the district court failed to specifically address points that rebutted the domestic abuse presumption created by the legislature when it amended the statute. There, the supreme court discussed such omission:

> The court also failed to discuss the significance of the evidence creating a rebuttable presumption against joint custody. See Iowa Code § 598.41(1)(b). These omissions, however, are not fatal under our de novo review. The record makes clear that the court gave careful thought to the domestic abuse issue and found that it was not significant enough to be the sole factor in determining custody of the children.
> The fact that the court did not specifically state it was following the new sections of the Code does not necessarily mean that it did not properly weigh the evidence. In its final judgment and decree of dissolution, the court weighed other factors in determining which parent should be awarded physical care. It noted that "the stability of each party over the past 15 months may be the differentiating factor between the parties" and "[t]he most recent activity of the parties, say, perhaps the last 28 months should carry more weight than activity by each of the parties committed five to eight years ago."
> . . . .
> [Appellant] argues that under the amended language of section 598.41, evidence of domestic abuse essentially trumps any and all other factors that the court can consider in making custody determinations. We note, however, that evidence of domestic abuse merely creates a rebuttable presumption against joint custody. See *id.* § 598.41(1)(b), (2)(c). Thus, we must consider the evidence of domestic abuse, under the standard and scope of review as enunciated above, in determining if the presumption is rebutted and accordingly, whether that one factor should be determinative.
> . . . .
> Any evidence of domestic abuse does not . . . automatically and as a matter of law preclude joint custody. Rather, we must

consider the evidence in determining whether such a presumption is sustainable.

. . . .

Having determined that the evidence of domestic abuse does not trump the other statutory and common law factors, we find that the district court correctly awarded joint custody of the children.

. . .

*Ford*, 563 N.W.2d at 632-33 (first alteration in original).

Under the *Ford* case, the district court is to analyze whether other factors within section 598.41 establish that it is in the best interest of the child that joint custody be awarded—thus rebutting the domestic abuse presumption. *Id.* at 632. Here, the district court was well aware of the presumption and found that other factors warranted joint legal custody. Although the trial court did not itemize the section 598.41 factors, it obviously considered them and implicitly found the presumption rebutted.

Even though we find the district court did not err in its statutory analysis involving domestic abuse in relation to legal custody, this court is obligated to conduct a de novo review. In doing so, on our review of the record, we find the district court's conclusion was appropriate.

The parties' relationship started while Stephanie was not yet eighteen years old and still in high school. Chris was approximately eight years older. While living at home, Stephanie had a tumultuous relationship with her mother, which resulted in her moving out. Stephanie first moved in with Chris, but after some difficulties, she moved in with a high school friend and her mother. The relationship was rocky, with Chris exhibiting a jealous, controlling nature. Stephanie had moved out before the parties became aware that she was pregnant. After Stephanie found out she was pregnant, Chris rented an

apartment and supported Stephanie while the two continued their off-and-on relationship.

Eventually, Stephanie could not tolerate Chris's controlling, suspicious treatment. During the latter part of her pregnancy, Stephanie moved to a maternity home in Spirit Lake, Iowa, where she received housing with pre- and post-natal care and instruction. J.E.H. was born late summer of 2011. Shortly thereafter, Stephanie applied for a domestic abuse protective order against Chris, which was granted.[2] Although there has been disagreement between the parties at times, there has been no further evidence of domestic abuse by Chris during the past five years.

Following J.E.H.'s birth, Stephanie returned to the maternity home in Spirit Lake. In early 2012, she moved back to Cedar Rapids with J.E.H. and lived with her father. Stephanie applied for government aid and the Child Support Recovery Unit (CSRU) required her to identify the putative father. Stephanie initially named a person other than Chris as the father, but that proved to be incorrect. Stephanie then provided CSRU with Chris's name. During this time, Stephanie acknowledges not allowing Chris to have contact with J.E.H., since she was unsure whether Chris would be established as the father and then not develop a relationship with the child. Chris continued to show interest in whether he was the father. CSRU initiated an action for child support against Chris.[3] Genetic testing confirmed Chris as J.E.H.'s biological father and a consent order was entered in June 2012 establishing Chris's paternity and setting his child

---

[2] Dickinson County Case No. DACV025008.
[3] Linn County Case No. DRCV075906.

support and medical support obligations. On September 10, 2012, due to Stephanie's resistance to Chris's involvement with J.E.H., Chris filed the custody and visitation petition. Approximately one year after obtaining the domestic abuse no-contact order, Stephanie applied for an extension of the order for another year. Following a hearing, the Dickinson County court found no ongoing basis for the no-contact order to be in place and denied the extension.

In July 2012, Stephanie relocated to Denison, in northwest Iowa, to attend Job Corps training. On March 22, 2013, the court entered a temporary order that provided for Chris to start having supervised visits with J.E.H., followed by weekend visitation with a pick-up and drop-off point halfway between Cedar Rapids and Denison. Stephanie's only mode of transportation was the Job Corps bus, which took her and J.E.H. to Grimes. An issue arose when Chris asserted that this was not an appropriate halfway point and he failed to return J.E.H. This was eventually resolved by the court as were several related contempt petitions.

A second issue arose in August 2013, when Chris returned J.E.H. and Stephanie observed what she claimed were suspicious bruises on her legs and in the groin area. This was reported to the department of human services, which investigated and had J.E.H. examined. Chris's explanation that the bruising resulted from J.E.H.'s car seat was sustained by the medical exam and the abuse claim was held to be unfounded.

A third issue arose in early 2014, when it was discovered that J.E.H. suffered severe hearing deficiency. Both parties agreed that J.E.H. needed surgery. Stephanie had J.E.H. seen at Boys Town Medical Center in Omaha,

Nebraska, since that was the closest appropriate medical provider to her location in Denison. Chris sought to have the medical care and surgery provided at University of Iowa Hospitals and Clinics, closer to his residence in Cedar Rapids. This dispute was resolved by court order following a hearing, which allowed the procedure and follow-up care to be provided in Omaha. As the district court pointed out:

> As noted in the Court's order entered May 5, 2014, the *parties were in agreement* at that time that each was seeking a surgical solution which would be in the best interests of the minor child; *both parties agreed* that the surgical options in Omaha and at the UIHC were sound and reasoned medical alternatives; and *both agreed* that either location for the surgery would result in one parent being located a substantial distance from the location of the surgery.

(Emphasis added.) By the time of the surgery in July 2014, Stephanie had completed the Job Corps training and relocated to Lisbon, Iowa, just east of Cedar Rapids. Because of some transportation issues, Stephanie ended up driving Chris to Omaha for the surgery. Since the cochlear implant surgery, the parties have disagreed on where J.E.H. should receive her continuing post-surgery care. Stephanie wanted the care to continue in Omaha, despite the travel distance from Cedar Rapids/Lisbon. She believed a continuity of care for the one-year post-surgery period was preferential to transfer of care to the University of Iowa Hospitals and Clinics. Chris desired the care transferred closer, to Iowa City, due to the round-trip travel time to Omaha for J.E.H. as well as both Stephanie and him.

These disputes between the parties have legitimate merit on both sides. The parties also have points of agreement when it comes to their daughter.

Based upon the evidence, including that surrounding these issues, the district court concluded:

> All of the witnesses testifying testified that J.E.H. loves both of her parents very much and has bonded closely with each of her parents. The undisputed evidence also establishes that both of the parties love and nurture J.E.H.; that both parties have been supportive of J.E.H.'s relationship with the other parent; and that, despite the fact that there have been tensions between the parties related to the matters involved in this litigation, each of the parties generally has worked hard to keep J.E.H. out of the middle of any disputes and to avoid tension for J.E.H. in connection with any disputes between the parties.
>
> The demeanor of each of the parties during their testimony supports the substantive testimony and evidence that each loves and cares for J.E.H. Each of the parties lit up when talking about their time spent and activities with J.E.H., and each provided sincere and insightful detail with respect to their relationship with J.E.H. Both parties acknowledged that the other party is a good parent to J.E.H.; that it is important that J.E.H. continues to have a close relationship with both parties; and each of the parties has supported and testified they will continue to support the relationship of J.E.H. with the other party.

Based upon our review of the record, each party is a suitable custodian. J.E.H.'s psychological and emotional needs and development would suffer without active contact and attention from both parents. Although their communication needs improvement, which each party recognizes, both parents can communicate with each other regarding the child's needs. Since the court order allowing visitation, Chris has actively cared for J.E.H. and shows an interest in continuing to be involved with her. Both parents testified they will continue to support the relationship of J.E.H. with the other party. J.E.H. is strongly attached to each parent and a joint legal custody arrangement is appropriate. The parties' current residences are in fairly close proximity, is not a problem and favors both parents' involvement. Stephanie acknowledges that

Chris provides appropriate care to J.E.H. while she is in his care during visitation, and her safety with Chris is not a concern.

Based upon our own review of the record, our de novo determination is that joint legal custody is in J.E.H.'s best interest, the presumption based upon prior history of domestic abuse is rebutted, and joint legal custody was properly ordered by the district court and should be affirmed.

## IV. Transportation for visitation

In her brief, Stephanie states that the transportation provisions for visitation in the decree should be modified. However, having made that statement, neither Stephanie nor Chris discusses this issue further in their respective briefs. This court is left at this juncture to speculate on what modifications are being requested, would be more beneficial, or would even work without input from the parties. For this reason, we decline to modify the district court decree and leave it for a later modification proceeding if either party finds the current transportation arrangements unworkable. This issue is deemed waived. *See* Iowa R. App. P. 6.903(2)(g)(3).

## V. Court costs.

Stephanie contends that the district court erred in requiring her to pay all of the court costs related to this action other than the court-appointed attorney fees which Chris incurred in the contempt actions. Court costs are generally controlled by Iowa Code section 625.1, which provides, "Costs shall be recovered by the successful party against the losing party." Nonetheless, in an equity action the trial court has a large discretion in the matter of taxing costs and we

will not ordinarily interfere therewith.  *Wymer v. Dagnillo*, 162 N.W.2d 514, 519 (Iowa 1968).

The district court did not give an explanation for the assessment of court costs.  The evidence in this case shows that at the time of trial, both parties had approximately the same annual income.  Pay records submitted at trial and attached to Child Support Worksheets indicated that Chris had earned $5,217.13 between June 26 and November 9, 2014, representing twenty weeks of work.  Extrapolating to fifty-two weeks, Chris would have $13,564.54 annual gross income.  Stephanie testified she earns $10.72 per hour, at twenty-five hours per week, or $13,936.00 annually, but she expected to have her weekly hours increased once she completed a probationary period.

Stephanie argues that even though their annual incomes appear to be equal, she is obligated to pay $600 per month in day care expenses for J.E.H. When this factor is included in the analysis, she contends that Chris is in a better position to afford the court costs and they should be assessed to him.  This court cannot agree.  The payment of day care expenses is already included in the calculation of child support which Chris is ordered to pay.  *See* Iowa Ct. R. 9.5(10) ("Actual child care expense while custodial parent is employed, less the appropriate income tax credit.")

It appears the district court assessed court costs to Stephanie on the basis of section 625.1, in that Chris prevailed on the primary issue in the custody trial, receiving joint legal custody.  This ignores the case law which grants the court discretion in an equity action.  It is more equitable to base the assessment in this case on the parties' respective incomes, which are approximately equal.  The

costs in this case should be assessed one-half to each party, with Chris responsible for reimbursement of his court-appointed attorney fees in the contempt proceedings.

## VI. Conclusion

The district court did not incorrectly apply the statutory analysis regarding the presumption when there is a finding of a history of domestic abuse. Upon de novo review, we find the evidence rebutted the presumption, and the award of joint legal custody appropriate. Finally, the case is remanded to the district court for entry of an order assessing the court costs in this action one-half to each party, except that Chris shall be responsible for reimbursement of his court-appointed attorney fees in the contempt proceedings. All other provisions of the district court's Findings of Fact, Conclusions of Law and Orders Related to Custody Matters filed on February 5, 2012 are affirmed. Costs of the appeal are assessed equally to each party.

**AFFIRMED IN PART, MODIFIED IN PART AND REMANDED FOR ENTRY OF ORDER ON COURT COSTS.**