# IN THE COURT OF APPEALS OF IOWA

No. 16-0082
Filed September 28, 2016


**JESSICA A. BOHANNON,**
     Petitioner-Appellee,

**vs.**

**DAYNE SMOLIK,**
     Respondent-Appellant.
_____


Appeal from the Iowa District Court for Mitchell County, Colleen D. Weiland, Judge.


The father appeals from the child custody decree entered by the district court after trial, challenging the placement of the minor child in the mother's physical care and the amount of parenting time awarded to the father. **AFFIRMED.**


Roger L. Sutton of Sutton Law Office, Charles City, for appellant.

Kristy B. Arzberger of Arzberger Law Office, Mason City, for appellee.


Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**POTTERFIELD, Presiding Judge.**

Dayne Smolik appeals from the district court's custody decree concerning his child with Jessica Bohannon. Dayne challenges the court's placement of the parties' child in the physical care of Jessica rather than ordering joint physical care. In the alternative, he asks for additional scheduled parenting time with the child. Both parties request appellate attorney fees. We affirm.

**I. Background Facts and Proceedings.**

Dayne and Jessica began a romantic relationship while both attended high school. Although they never married, they lived together on-and-off for approximately eleven years. They had one child together, the child whose interests are affected by this cause of action.

At trial through her own testimony and that of several witnesses, Jessica presented evidence that Dayne subjected her to physical and emotional abuse during the course of their eleven-year relationship. Jessica also presented testimony and photographic evidence of Dayne having destroyed several items of her personal property. She introduced evidence the child was present during some of Dayne's abusive outbursts. A petition for relief from domestic abuse was filed and later dismissed after Jessica claims she was confused about questions she was asked relating to the abuse. Dayne denies that he ever physically or emotionally abused Jessica, although he does admit to mutual pushing and shoving. Dayne also admits to damaging her personal property when he was angry with Jessica. He contends that this anger has subsided since he and Jessica have broken up.

After the couple parted ways, Jessica and Dayne signed an informal paper for shared care. Dayne contends Jessica did so voluntarily, while Jessica maintains she only signed it because Dayne was harassing her about it. However, this document was never filed. A more formal agreement for joint care was presented to Jessica for her signature; however, Jessica never signed this document nor was it ever filed. The parties attempted shared care but have differing opinions as to its effectiveness.

Each parent has expressed concern for the child's welfare while in the other parent's care, based on people the other parent introduces to the child. Specifically, Jessica is concerned about certain individuals Dayne brings around the child who have negative feelings towards the government and one individual who is a convicted sex offender. Dayne is worried about Jessica's live-in boyfriend who has a prior assault conviction. Both parents have also accused each other of drug use.

Since Jessica and Dayne split up, Jessica and her new boyfriend have had a child. The two children reside together with Jessica.

The case went to trial on November 19 and 20, 2015 and reconvened on December 9 and 10, 2015. Jessica sought physical care of the child, while Dayne requested the court order joint physical custody.

In its findings of fact and conclusions of law, the court awarded the parties joint legal custody of the child. It awarded Jessica physical care of the child and set forth an evolving parenting schedule for Dayne for periods during the school years, holidays, and summer vacation. The parenting schedule includes provisions for longer periods of parenting time for Dayne as the child progresses

in age. The court also ordered Dayne to pay child and medical support to Jessica.

Dayne appeals.

## II. Standard of Review

Our review of child custody proceedings is de novo. *In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007). "We give weight to the findings of the district court, especially to the extent credibility determinations are involved." *Id.*

## III. Discussion.

### A. Court's Refusal to Grant Joint Physical Care

When physical care is at issue, our primary consideration is the best interests of the child. See Iowa R. App. P. 6.904(3)(o). Relevant to our discussion of the underlying physical-care issue requires application of Iowa Code section 598.41(5)(a) (2015), which states in pertinent part:

> [T]he court may award joint physical care . . . upon the request of either parent . . . . If the court denies the request for joint physical care, the determination shall be accompanied by specific findings of fact and conclusions of law that the awarding of joint physical care is not in the best interest of the child.

"This passage does not create a presumption in favor of joint physical care." *In re Marriage of Fennelly*, 737 N.W.2d 97, 101 (Iowa 2007). Rather, it is an option when it is found to be in the best interests of the child. *Id.*

In deciding whether joint physical care is appropriate in a given case, "[t]he critical question is . . . whether the parties can communicate effectively on the myriad of issues that arise daily in the routine care of a child." *In re Marriage of Hynick*, 727 N.W.2d 575, 580 (Iowa 2007). In determining what custodial

arrangement is in the best interests of the child here, we consider the nonexclusive factors outlined in Iowa Code section 598.41(3) and *Hansen*. *See Hansen*, 733 N.W.2d at 696. The factors we consider include (1) continuity, stability, and approximation; (2) "the ability of the [parents] to communicate and show mutual respect"; (3) "the degree of conflict between parents"; (4) "the degree to which the parents are in general agreement about their approach to daily manners." *Id.* at 696–99. Not all factors are given equal consideration, and the weight of each factor depends on the specific facts and circumstances surrounding each case. *See In re Marriage of Williams*, 589 N.W.2d 759, 769 (Iowa Ct. App. 1998). The most important issue we must determine is "which parent will do a better job raising the child; gender is irrelevant, and neither parent should have a greater burden than the other in attempting to gain custody in an original custody proceeding." *In re Marriage of Decker*, 666 N.W.2d 175, 177 (Iowa Ct. App. 2003). Moreover, child custody decisions are not rewards for a parent's good behavior nor are they punishments for a parent's bad behavior. *See In re Marriage of Kleist*, 538 N.W.2d 273, 277 (Iowa 1995).

Dayne argues the district court should have granted joint physical custody. He bases this argument on the fact that prior to trial, he and Jessica had an informal joint physical custody arrangement that worked well, in his opinion, and continuing the arrangement is in the best interest of their child.

He further contends he and Jessica both engaged in "misbehaviors" during their romantic relationship but were able to set their differences aside to benefit their child. He asserts this consideration alone justifies coparenting and

should make Dayne and Jessica an ideal couple to exercise joint physical care of their child.

The district court found joint physical custody was not in the child's best interests and the child did not thrive during the period of informal joint care. As is evident from the following excerpt from the thoughtful and extensive findings in the decree, the district court carefully considered all relevant factors in making its specific findings against joint physical care:

> None of these [*Hansen*] factors weigh in favor of joint physical care by these two parties. Nothing about the parties' circumstances reveals that they can effectively co-parent their child in such an arrangement. Despite their ability to maintain some text message cordiality during the separation, Jes[sica] and Dayne's romantic and parenting relationship is replete with examples of discord and hostility. The court is convinced that Dayne regularly inflicted physical, verbal and emotional abuse on Jes[sica]. In fact, Dayne's behavior is "textbook abuser," in that he also isolated and criticized Jes[sica], excessively monitored her routines and whereabouts, and aggressively retaliated based on disproportionate jealousy and perceived slights. I certainly do not mean to indicate that Jes[sica] has always acted reasonably towards or in regard to Dayne, but her manner of coping and functioning is generally much healthier than that of Dayne. Although I have some hesitation about her current choice of romantic partner, it is clear to me that Jes[sica] is better situated to tend to the child's physical and emotional needs.
>
> There are additional factors weighing against joint physical care. The child has not thrived in joint physical care during the separation. I am further convinced that Jes[sica] was the primary caretaker of the child until the parties' separation. And while the child and Dayne have clearly established a bond, I question whether Dayne has the patience or skills to function as a primary parent, especially in circumstances that will require anger control. Finally, the child now has a sibling in Jes[sica]'s house. For all of these reasons, Dayne's request for joint physical care is denied, and an award of physical care is made to Jes[sica].

We agree with the district court's award of physical care to Jessica. Jessica presented evidence from multiple witnesses that she has been the

primary caretaker of the child. The evidence indicated she was the primary person ensuring the child was fed, clothed, bathed, and transported to and from daycare on a daily basis.

The district court also found a history of domestic abuse. In making the determination of what a "history of domestic abuse" is as used in Iowa Code section 598.41, our supreme court has held that a "history" is not necessarily established by a single incident nor by multiple minor incidents. *See In re Marriage of Forbes*, 570 N.W.2d 757, 760 (Iowa 1997). However, a finding of a history of domestic abuse creates a rebuttable presumption against an award of custody. *See In re Marriage of Ford*, 563 N.W.2d 629, 632 (Iowa 1997).

"Because domestic abuse reflects the ability of the parties to listen to one another and respect one another's opinions and feelings, the existence of domestic abuse is a significant factor in determining whether joint physical care is appropriate." *Hynick*, 727 N.W.2d at 579. The history of Dayne abusing Jessica and his violent actions damaging her personal property in the presence of the child makes awarding joint physical care inappropriate.

Dayne also contends "it is incredible" the district court found compelling the fact that the child here has a six-month-old half-sibling and used that as a reason to not grant joint physical care. While we agree the district court did not expound on its reasoning here, it did provide substantial reasons for the other factors it applied. While joint physical care may be appropriate in some

situations involving half-siblings,[1] the physical-care determination is still based on the best interests of the child. *See Hansen*, 733 N.W.2d at 692.

As our supreme court held in *Hansen*, "the objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *Id.* at 698 (citations omitted). Having considered the evidence before us, we find it is in the best interests of the child for Jessica to have physical care.

We affirm the district court's award of physical care to Jessica.

### B. Extension of Substantial Contact

Alternatively, Dayne argues the parenting time awarded to him by the district court does not provide substantial contact between him and the child. Dayne claims the parenting-time schedule is contrary to Iowa Code section 598.41(1)(a) in that it is not in the best interests of the child and it does not promote continuing physical and emotional contact with both parents. He claims the district court's order for liberal visitation is a "sham."

As to the parenting schedule, Dayne has requested this Court grant him three days of parenting time every other weekend and one overnight weeknight every week when he does not have scheduled weekend parenting time.

Pursuant to the decree, during the 2015-2016 and 2016-2017 school years, Dayne has scheduled parenting time with the child every other weekend from Friday after school (or 3:00 p.m. if there is no school) until 5:00 p.m. on Sunday. Dayne also has scheduled parenting time with the child every

---

[1] *See, e.g., Collett v. Vogt*, No. 14-0530, 2014 WL 5862144, at *4 (Iowa Ct. App. Nov. 13, 2014) (holding a joint physical custody arrangement does not impede a child's ability to spend half of its time with its half-siblings).

Wednesday evening from after school (or 3:00 p.m. if there is no school) until 7:00 p.m. Then, beginning with the 2017-2018 school year and all subsequent school years, Dayne's scheduled parenting time will be every other weekend, beginning on Thursday after school (or 3:00 p.m. if there is no school) until 5:00 p.m. on Sunday. He will also have scheduled parenting time every other Thursday after school (or 3:00 p.m. if there is no school) until Friday morning at school (or 10:00 a.m. if there is no school).

We decline to expand the school year parenting schedule; the district court provided a thoughtful schedule that already includes additional parenting time, which evolves as the child ages.

Additionally, Dayne argues his summer parenting schedule should be amended to provide him alternating weeks of parenting time, so he can enjoy vacation time and summertime activities with the child. *See, e.g., In re Marriage of Kingrey*, No. 15-0384, 2016 WL 1681091, at *5 (Iowa Ct. App. Apr. 27, 2016).

For the 2016 and 2017 summers, Dayne has scheduled parenting time every other weekend, beginning on Fridays at 3:00 p.m. and ending on Sundays at 5:00 p.m. He also has scheduled parenting time every Wednesday for an overnight visit, beginning at 3:00 p.m. until Thursday at 10:00 a.m. The schedule then increases in 2018 and every subsequent summer to every other Wednesday at 3:00 p.m. until Monday at 10:00 p.m.

Like his parenting schedule during the school year that will increase as the child ages, so too will his scheduled parenting time during the summer. We find the district court provided a well-reasoned schedule and we decline to expand his summer parenting schedule. *See id.*

Dayne additionally argues "at Christmas time holidays be alternated on a weekly basis during the school holidays or equally split." Insofar as we understand his position, the current parenting-time schedule already provides for alternating holidays between Jessica and Dayne. We decline to modify the current schedule.

Dayne further contends the language in the decree as it pertains to e-mail and telephonic contact with the child while the child is in the other parent's care should be more specific.[2] He argues each party should have regular e-mail and telephonic contact at appropriate times and for reasonable durations. While such specific language may be helpful in this case, we decline to address this issue on appeal as Dayne did not preserve the issue by filing a motion to enlarge the findings under Iowa Rule of Civil Procedure 1.904(2).

We affirm the parenting schedule as set forth in the decree.

### C. Attorney Fees

Both parties ask the court to award them appellate attorney fees. Appellate attorney fees are not a matter of right but rather rest in this court's discretion. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). In determining whether to award attorney fees, we consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993). Under these circumstances, we decline to award either party appellate attorney fees.

---

[2] Page six of the decree provides, "Each party shall arrange, allow and encourage reasonable telephone and/or electronic contact between the child(ren) and the other parent."

Each party bears the cost of its own attorney and any costs incurred.

**AFFIRMED.**