**In re the MARRIAGE OF Shane M. FORBES and Hannah R. Forbes.**

**Upon the Petition of**

**Shane M. Forbes, Appellee,**

**And Concerning**

**Hannah R. Forbes, Appellant.**

No. 96–2108.

Supreme Court of Iowa.

Nov. 26, 1997.

Karen Kienast of Legal Services Corporation of Iowa, Dubuque, for appellant.

John C. Wagner and Christopher L. Jorgensen of the John C. Wagner Law Offices, P.C., Cedar Rapids, for appellee.

Considered by LARSON, P.J., and CARTER, LAVORATO, NEUMAN, and SNELL, JJ.

SNELL, Justice.

This appeal is on the sole issue of custody of the parties' children, Tyler and Shanna. The trial court granted joint custody of Tyler and Shanna, with primary physical care awarded to Shane M. Forbes, their father. Custody of a third child, Jonathan, was placed with Hannah R. Forbes, his mother. Shane is not the biological father of Jonathan. Hannah has appealed seeking primary physical care of Tyler and Shanna. We affirm.

## I. Background Facts and Proceedings

Shane and Hannah were married in 1992. Two children were born of the marriage, Tyler, born October 6, 1992, and Shanna, born March 26, 1994. Hannah's other child, Jonathan, was born May 16, 1991.

The parties separated in 1995 and Shane filed a petition for dissolution of marriage. At the dissolution hearing the central issue was which party should be awarded primary physical care of the children. The district court noted that both parties acknowledged physical altercations occurred during the course of their marriage. The court was not convinced that "the physical and verbal abuse was committed only by Shane against Hannah." The court found there was "extensive evidence establishing that Hannah has and apparently continues to exercise physical discipline on the children which sometimes results in physical injury to the children." After a lengthy recital of the various instances of physical punishment of the children by Hannah, the court determined that Shane should be awarded primary physical care of Tyler and Shanna.

Hannah contends that evidence was presented showing a history of domestic abuse, perpetrated by Shane upon Hannah, in the parties' marriage. Hannah specifically notes that in 1995 Shane pleaded guilty to domestic abuse and that she received a temporary protective order pursuant to Iowa Code chapter 236 (1995). Hannah argues, therefore, that the district court erred in failing to analyze, as part of its custody determination, whether there was a history of domestic abuse in the marriage pursuant to sections 598.41(1)(b) and (3)(j) (Supp.1995). She maintains a rebuttable presumption against

an award of joint custody existed pursuant to section 598.41(1)(b).

Hannah further argues the court erred in awarding Shane primary physical care of the children. Hannah notes the history of Shane's domestic abuse, and argues that Tyler and Shanna should not be separated from their half-brother Jonathan, and that it is not in the children's best interests to be placed with Shane.

Shane argues that the limited evidence presented did not establish a history of domestic abuse. In the alternative, Shane argues that if a history of domestic abuse was established, the presumption against joint custody was rebutted. Finally, Shane argues that even if the court erred in awarding joint custody, an award of sole custody of the children to him would be appropriate under the circumstances of this case.

## II. Review Standard

Our standard of review in this matter is de novo. *In re Marriage of Sires,* 506 N.W.2d 813, 814 (Iowa App.1993). We give weight to the findings of the trial court, which had an opportunity to view the demeanor of the witnesses when testifying. Iowa R.App. P. 14(f)(7); *In re Marriage of Moorhead,* 224 N.W.2d 242, 244 (Iowa 1974); *Sires,* 506 N.W.2d at 814.

## III. Analysis

Central to the custody issue here is the application of Iowa Code section 598.41. Sections 598.41(1)(b), (d) and (2)(c), (d) pertain to the effect of a history of domestic abuse by a parent. We recently considered these provisions in *In re Marriage of Ford,* 563 N.W.2d 629 (Iowa 1997). Although the trial court in *Ford,* as here, failed to specifically discuss these sections, those omissions were not fatal under our de novo review. *Ford,* 563 N.W.2d at 632. We said: "The record makes clear that the court gave careful thought to the domestic abuse issue and found that it was not significant enough to be the sole factor in determining custody of the children." *Id.* This is also true in the case at bar.

In interpreting what is sufficient to constitute a "history of domestic abuse," we find that a "history" is not necessarily established by a single documented incident, as claimed by Hannah. Nor does more than one minor incident automatically establish a "history of domestic abuse." *See, e.g., Simmons v. Simmons,* 649 So.2d 799, 801–02 (La.Ct.App.1995) (occasional incidents of violence do not amount to a "history of perpetrating family violence"); *Hamilton v. Hamilton,* 886 S.W.2d 711, 714 (Mo.Ct.App.1994) (two incidents of assault do not constitute a pattern of domestic violence). It is for the court to weigh the evidence of domestic abuse, its nature, severity, repetition, and to whom directed, not just to be a counter of numbers.

Furthermore, even if we did find a history of domestic abuse existed in this case, the presumption created by section 598.41(1)(b) against awarding joint custody has been rebutted. Clearly, there is evidence of domestic abuse in the Forbes home, as contemplated by section 598.41. However, the record reflects that the abuse was inflicted by both parties, not just Shane. In addition, there is no evidence that Shane ever harmed the children, while there is ample evidence that Hannah injured the children several times in her attempts to discipline them. We conclude from this evidence that the presumption created by section 598.41(1)(b) has been rebutted. *See Ford,* 563 N.W.2d at 632–33.

We now turn to a consideration of the factors set forth in section 598.41 to determine what custody arrangement is in the best interests of these children. In the instant case, the court found that Hannah had inflicted domestic abuse on Shane as well as having received abuse. Both parties acknowledged physical altercations during their marriage. Hannah admitted that Shane had received bruises as a result of her striking him. The domestic abuse charge to which Shane pleaded guilty arose from an incident shortly before Shane filed for divorce. This is the only time police officers charged Shane with domestic abuse. Two other complaints of domestic abuse by Hannah to the police did not result in charges against Shane.

Of more significance is the treatment of the children. The trial court found, as do we, that there is no evidence Shane ever struck the children leaving them with any mark or bruise. By contrast, Hannah is a severe disciplinarian. She has disciplined the children with physical injury resulting. Several photographs in evidence showed bruises on the children around their faces, eyes, ears, legs, and buttocks. Hannah seeks not to reform her hurtful treatment of the children but to justify it. She inflicts punishment of this caliber to ensure that "she is not going to have brats." Armed with the excuse that she did not intend to bruise or mark her children, she continues to practice the same kind of discipline.

The trial court also found that Hannah allowed the children to suffer severe diaper rash because it was not her turn to change the diaper. Outside play was not supervised by Hannah. Hannah thumped the children in the mouth, pinched the muscle above the collarbone, grabbed their ears, and muffled their crying by covering their mouths and noses. Jonathan was taken to Mercy Hospital Medical Center with left arm pain after Hannah pulled him up the stairs. He sustained a left wrist sprain from that incident. Medical records from St. Luke's Immediate Care Center in October 1995 show treatment for Tyler with bruises on both cheeks, Shanna with a bruise on her upper eyelid and a four centimeter scratch, and Jonathan with a severe bruise on his right ear, an abrasion over the apex of the ear and a one centimeter bruise on his right forearm. The doctor, after conducting examinations, notified the Department of Human Services, which investigated. A second report to the department for suspected child abuse was made in July 1996. Tyler, age three, exhibited a scratch on his buttock and a bruise over his kidney area. After interviews, the reports of child abuse were reported to be unfounded.

The court considered Shane's willingness to support all three children, and his desire for custody of all three. However, the court found there was not enough evidence to grant custody of Jonathan to Shane, who is not his biological father, on the basis of equi-

table parenthood. *See In re Marriage of Gallagher,* 539 N.W.2d 479, 481 (Iowa 1995).

■ Hannah seeks support for her position from the doctrine that siblings should not be separated without good and compelling reasons. *In re Marriage of Winter,* 223 N.W.2d 165, 168 (Iowa 1974); *Jones v. Jones,* 175 N.W.2d 389, 391 (Iowa 1970). This standard has been met in the instant case.

With considerable care, the trial court reviewed the evidence and concluded that its custody decision was in the best interests of the children. The long-term best interests of the children are the guiding factor in deciding who should provide their physical care. Iowa Code § 598.41(1)(a); *Winter,* 223 N.W.2d at 166. Our de novo review leads us to the same conclusion. Hannah's excessive and abusive methods of discipline have been harmful and are potentially harmful to the children. Her claim for primary physical care of Tyler and Shanna is defeated by her past conduct and continuing views as to appropriate discipline.

The judgment of the trial court is affirmed.

The parties shall pay their own attorney fees. Court costs are assessed to appellant.

**AFFIRMED.**