# IN THE COURT OF APPEALS OF IOWA

No. 14-0196
Filed October 15, 2014

**CHRISTOPHER SIVERTSEN,**
Petitioner-Appellee,

**vs.**

**ELIZABETH M. ELLS,**
Respondent-Appellant.

_____

Appeal from the Iowa District Court for Jones County, Ian K. Thornhill, Judge.

Elizabeth Ells appeals the district court's order awarding Christopher Sivertsen physical care of their child. **AFFIRMED.**

Joseph D. Ferrentino of Iowa Legal Aid, Dubuque, for appellant.

Geneva L. Williams of Williams Law Office, P.L.L.C., Cedar Rapids, for appellee.

Considered by Vaitheswaran, P.J., and Doyle and McDonald, JJ.

**DOYLE, J.**

Elizabeth (Liz) Ells appeals the order granting physical care of the parties' son to Christopher (Chris) Sivertsen. Liz argues the district court should have awarded her physical care of their child. Because we agree the placement of physical care with Chris was in the child's best interest, we affirm.

### I. Background Facts and Proceedings.

Chris and Liz are the parents of D.S., born in 2011. Liz has one other child, born in approximately 2008. That child is placed in the physical care of the child's father, with Liz having visitation.

The parents met while working at a club, and they later began a relationship. They lived together for a short time but separated in 2012. Chris and Liz never married.

The parties' relationship prior to their separation was rocky. One time, while a passenger in Liz's vehicle, Chris punched the dashboard, causing damage, because he was angry about her tailgating and texting while driving. Twice during the relationship, Liz filed allegations of domestic abuse against Chris. She dismissed the petition in the first matter, but the second matter in 2012 advanced to a contested hearing. Following the hearing, the court found a domestic assault had occurred, and it issued a domestic abuse protection order.

Around the same time, Chris filed his petition in district court to establish child custody. Liz answered and requested the parties be granted joint custody with their child placed in her primary care, with Chris having reasonable visitation. Liz requested mediation be waived because there was a history of domestic abuse between the parties, and the court waived mediation. A

temporary custody order was established thereafter, and it continued the shared-care arrangement the parties' had begun after separating, alternating care of the child weekly.

Trial commenced in November 2013. There, Chris said he would be "okay" with shared care of the child until the child started school, but his preference was that he have immediate primary care of the child, with Liz having visitation. Liz said she would like to have full custody, but she felt the child would benefit from parties' continued shared care until the child started school, at which time she wanted the child placed in her primary care. Chris admitted he had punched Liz's dashboard out of frustration, but he denied any physical abuse. Additionally, there were allegations Liz had abused alcohol or substances during their relationship, and Liz admitted she had had some issues while working at the club. Liz testified she did not, at the time of trial, have any issues with illegal drugs, and she only consumed alcohol once in a while.

At the time of trial, both parties had gained full-time employment elsewhere, with Chris working at an auto parts store and Liz at a prescription-processing center and a beauty supply store. The parties were communicating at the time of trial, the protection order having expired, and they were doing a good job keeping each other updated. Both parties generally testified the other parent loves their child; however, Chris was more critical of Liz's parenting, claiming she had a wonderful heart but was short on patience. Liz denied his assessment, and she asserted she had been the child's primary caregiver until the parents separated, noting she had taken him to the doctor more times than Chris but conceding Chris was employed full-time at that time. She testified she

was concerned about Chris's abuse and objectification of women, but she felt their child would benefit most from having both parents in his life as much as possible.

Following trial, the court entered its order, noting it had "received evidence from both parties on the abuse issue," and it concluded both parties were "'overstating' their respective positions." The court was therefore "not convinced, by a preponderance of evidence, the alleged physical abuse of Liz by Chris took place," though it believed "the relationship between the parties was contentious during the time they were romantically involved." However, the court found the parties had matured and grown as parents since their separation, resulting "in the parties' ability to communicate and work together in the best interest of [their child]." The court further found:

> Both parties love [their child] and have a strong and positive connection to him. Both parties have suitable housing for [their child] and are able to provide for his basic needs. All the evidence presented at trial suggests [their child] is growing and developing on schedule with his peers, is a happy child, is in good health, and loves both his parents. While each party has minor criticisms of the other's parenting style, neither voiced serious concern for [their child's] well-being while in the other's custody outside of a diaper rash issue raised by Chris. Considering the totality of the evidence, the court finds both parties are fully capable of caring for [their child].

After reviewing the relevant statutory factors and case law, the court concluded Liz's proposal that the parties have joint physical care of their child until he began attending elementary school was in the child's best interests, and the court continued the alternating weekly schedule set forth in the temporary custody order. However, due to the parties' geographic distance, the court concluded joint physical care was not workable once the child began attending school.

Finding that "both parties are equally able to provide for [the child's] physical care" and noting it was a close call, it determined the balance tipped in favor of Chris because "he has been the more stable parent for a longer period of time and has provided [the child] with a consistent home since his birth." The court awarded Chris primary physical care of the child beginning August 1 of the year the child enters kindergarten.

Liz now appeals.

### II. Discussion.

We review de novo decisions on child custody. *In re Marriage of Hynick*, 727 N.W.2d 575, 577 (Iowa 2007). We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). Despite our de novo review, we give strong consideration to the district court's fact findings, especially with regard to witness credibility. *Hynick*, 727 N.W.2d at 577.

In matters of child custody, the first and foremost consideration "is the best interest of the child involved." *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983); *see also* Iowa R. App. P. 6.904(3)(o). The Iowa Code provides a nonexclusive list of factors to be considered in determining a custodial arrangement that is in the best interest of a child. Iowa Code § 598.41(3) (2013); *In re Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007). We also look to the non-exclusive considerations articulated in *In re Marriage of Winter*, 223 N.W.2d 165, 166-67 (Iowa 1974) (including the needs of the child, the characteristics of the parents, the relationship between the child and each parent, and the stability and wholesomeness of the proposed environment). The goal is to assure the

child "the opportunity for the maximum continuing physical and emotional contact with both parents after the parents have separated or dissolved the marriage." Iowa Code § 598.41(1)(a). We seek to place the child in the environment "most likely to bring [the child] to health, both physically and mentally, and to social maturity." *Hansen*, 733 N.W.2d at 695.

On appeal, Liz argues the district court erred in finding the balance tipped toward Chris having physical care of the child when he begins school. Liz emphasizes Chris's history of domestic abuse, and she points to the entry of the protective order after another court found there had been domestic abuse by Chris. She takes issue with the custody court's finding "that the same allegations of domestic abuse were not established by a preponderance of the evidence," and she argues the principles of issue preclusion prevent the court from revisiting the domestic abuse issue. Reviewing the record de novo, even if the custody court should have found Liz had already established an incidence of domestic violence perpetrated by Chris by way of the other court's earlier ruling and entry of a protective order, we cannot say this supports reversal of the court's ruling, considering all of the applicable factors and the child's best interests.

It is true that domestic abuse is a substantial factor in determining custody. Iowa Code section 598.41(3) (2013) sets forth several factors for the court to consider in making an award of physical care, including whether a history of domestic abuse exists. *See* Iowa Code § 598.41(3)(j). This is because domestic abuse has "ravaging and long-term consequences" on children. *In re Marriage of Daniels*, 568 N.W.2d 51, 55 (Iowa Ct. App. 1997). In interpreting what is sufficient to constitute a "history of domestic abuse," the supreme court

has held a "history" is not necessarily established by a single documented incident. *In re Marriage of Forbes*, 570 N.W.2d 757, 760 (Iowa 1997). Nor does more than one minor incident automatically establish a "history of domestic abuse." *Id.* Although evidence of domestic abuse creates a rebuttable presumption against an award of custody, *see In re Marriage of Ford*, 563 N.W.2d 629, 632 (Iowa 1997), it is for the court to weigh the evidence of domestic abuse, its nature, severity, repetition, and to whom directed, not just to be a counter of numbers. *Forbes*, 570 N.W.2d at 760. We are mindful the district court had the benefit of hearing and observing the parties first-hand and therefore give considerable weight to its judgment. *Id.* at 759.

Here, the district court clearly weighed the evidence of domestic abuse, along with its nature, severity, repetition, and to whom directed, and it found, after hearing the witnesses first-hand, the parties had "overstated" the allegations. We give strong consideration to the district court's fact findings, especially with regard to witness credibility. *Hynick*, 727 N.W.2d at 577. This is not to say we take domestic abuse lightly, because "domestic abuse reflects the ability of the parties to listen to one another and respect one another's opinions and feelings." *Id.* at 579. However, the parties have moved on now, and the child is currently in the parties' joint physical care. Liz herself testified she believed joint physical care is in the child's best interests, which ordinarily negates the court's need to consider the factors set forth in section 598.41(3). *Id.* (citing Iowa Code § 598.41(4)).

Upon our de novo review of the record and considering the factors pertinent to physical care, we find no reason to disturb the district court's award

of physical care of the parties' child to Chris. The record shows there has been improved communication on the part of both parents, and this court expects the parties will follow through with the current court-ordered parenting schedule and facilitate a healthy and nurturing environment for their child. It is time for the parents to put their child first and work together as grownups for the best interests of everyone, and we trust they understand the importance of showing respect for one another as they embark on many years of joint parenting. We affirm the physical care decision of the district court. Costs on appeal are assessed to Liz.

**AFFIRMED.**