**IN THE COURT OF APPEALS OF IOWA**

No. 15-0047
Filed October 14, 2015

**IN RE THE MARRIAGE OF STACIA M. MEIEROTTO
AND RYAN E. MEIEROTTO**

**Upon the Petition of
STACIA M. MEIEROTTO,**
          Petitioner-Appellant,

**And Concerning
RYAN E. MEIEROTTO,**
          Respondent-Appellee.
_____

          Appeal from the Iowa District Court for Des Moines County, Michael J.

Schilling, Judge.


          A former wife appeals the child custody provisions of the decree dissolving

her marriage.  **AFFIRMED.**



          Andrew B. Howie of Hudson, Mallaney, Shindler & Anderson, P.C., West

Des Moines, for appellant.

          Marlis J. Robberts of Robberts, Kirkman & Engler, L.L.L.P., Burlington, for

appellee.



          Heard by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**POTTERFIELD, Judge.**

Stacia Meierotto appeals from the child custody provision of the decree dissolving her marriage to Ryan Meierotto. She contends the district court erred in placing the parties' two children—a daughter, born in June 2009, and a son, born in September 2011—in the parents' joint physical care. She asks that this court modify the decree by placing the children in her physical care and remanding for further proceedings concerning visitation and child support. Upon our de novo review of the record and considering the trial court's careful and thoughtful analysis, we affirm the decree in its entirety.

**I. Background Facts and Proceedings.**

Stacia and Ryan were married in 2008. They lived in the Des Moines area until 2012, when they decided to return to southeast Iowa where each had grown up and had extended family. Ryan took a position working for Lee County Bank and Trust in Fort Madison. The family moved to Burlington and began planning to build a home in the Danville Community School District where Stacia had attended school and Stacia's mother had taught for over thirty years. Stacia found full-time employment in mid-February 2013 with Orascom in Wever, Iowa.

Stacia filed for divorce on September 27, 2013, seeking physical care of the children. Ryan answered and requested the children be placed in the parties' joint physical care. In October, she filed an application for protective order, asserting Ryan had physically abused her. On November 4, 2013, the parties entered into a protective order by consent pursuant to which Stacia was granted possession of the rented marital residence, Stacia was granted temporary physical care of the children, and Ryan was granted parenting time on alternate

weekends from Friday evening to Monday morning and on every Wednesday and Thursday evening.

In April 2014, Stacia filed a motion to modify the protective order, noting she "expects to be offered employment in the Tampa, Florida area. It is in the best interests of the children to relocate with her to Florida while adjusting [Ryan's] visitation contact and costs of transportation." She asked that the court allow "relocation communication." Ryan responded and asked that the protective order be dismissed. He also filed a motion for a temporary injunction prohibiting Stacia from relocating the children until further order of the court.[1] On May 5, 2014, the court modified the November 4, 2013 consent order to allow communication between the parties and noting the parties agreed that neither would "permanently move the children outside the State of Iowa without further order of the court."

Trial was held July 9. On November 18, 2014, the court filed its findings of fact, conclusions of law, and decree in which it concluded joint physical care was in the children's best interests. The court ordered alternating weeks of care and set child support.

In ruling on Stacia's posttrial motion for enlarged findings, the court stated in part:

> The court first notes that it did not block Stacia's move to Florida, as she states. Stacia testified that if the court determined that a shared care arrangement best served the needs of the children, she intended to stay in Iowa. The court made the custody determination not to reward or punish either party, but because the court concluded the children would better achieve their full potential living in a shared custody arrangement with each parent.

---

[1] Trial was scheduled for July 2014.

Stacia appeals.

## II. Scope and Standard of Review.

Our review of child custody proceedings is de novo. *In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007). "We give weight to the findings of the district court; especially to the extent credibility determinations are involved." *Id.*

## III. Analysis.

Stacia argues the court should have awarded her physical care of the children, citing as the principal argument against joint physical care the children's history in which Stacia acted as primary caregiver. She also contends she and Ryan are not able to communicate effectively and have a high degree of conflict. Moreover, Stacia asserts the court's granting of joint physical care "wrongly emphasizes geography over the parent-child relationship." She argues the children's best interests lie in placing physical care with her.

Pursuant to Iowa Code section 598.41(2) (2013), "On the application of either parent, the court shall consider granting joint custody in cases where the parents do not agree to joint custody." Ryan requested joint physical care of the children. When determining whether joint physical care is appropriate, "our case law requires a multi-factored test where no one criterion is determinative." *Hansen*, 733 N.W.2d at 697.

> We continue to believe that stability and continuity of caregiving are important factors that must be considered in custody and care decisions. . . . All other things being equal, however, we believe that joint physical care is most likely to be in the best interest of the child where both parents have historically contributed to physical care in roughly the same proportion. . . . A second important factor to consider in determining whether joint physical

care is in the child's best interest is the ability of spouses to communicate and show mutual respect. . . .  Third, the degree of conflict between parents is an important factor in determining whether joint physical care is appropriate. . . .

. . . .

A fourth important factor in determining whether joint physical care is in the best interest of the children, particularly when there is a turbulent past relationship, is the degree to which the parents are in general agreement about their approach to daily matters.

*Id.* at 696–99 (internal citations omitted).

Each case is unique and must be considered upon its peculiar circumstances.  *Id.* at 699; *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983).  "The children's best interest is the 'controlling consideration.'"  *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015) (citation omitted); *accord Hansen*, 733 N.W.2d at 695.

As is evident from the following excerpt from the thoughtful, deliberate, and extensive findings in the decree, the trial court carefully considered all relevant factors:

> The Court strongly believes that both Meierotto children have a deep and abiding attachment to their parents.  Similarly, the Meierotto children have strong attachments to their maternal and paternal grandmothers, and to their paternal uncle Brad.  Stacia's father has also been a regular and positive influence in the lives of his grandchildren.  These attachments are vitally important to the long-range best interests of the children.
> The children also enjoy an established routine at Apple Blossoms daycare and an emotional attachment with Jodi Norton.  This routine and the attachment are important to their sense of security.  As noted, Ms. Norton credibly testified that the Meierotto children would be "devastated" if their contact with the father, grandparents, and extended family were disrupted.
> The Court concludes that the children's best interests will *not* be served by substantially curtailing their emotional attachment to their father and extended family.  Even though Stacia has been the primary caretaker, her plan to uproot the children and move to a distant place where neither she nor the children have family or

roots or a support system is inconsistent with the emotional stability of the children. The Court strongly believes that Stacia's plan is not in the best interests of the children.

The pathway to Stacia's decision to marry Mr. Gaa and relocate to Florida warrants examination and analysis. She agreed to sign a one-year lease in a strange place with a man she knew about a year while her dissolution of marriage case was pending. Two months later or so, Stacia accepted Mr. Gaa's proposal of marriage before her second marriage was dissolved. Mr. Gaa's marriage of some 30-plus years had just ended when he proposed to Stacia. . . . The Court believes that the interest of the children will be best served by a custody arrangement that allows them close, regular, and ongoing physical and emotional contact with both of their parents and the extended family on both sides. To grant Stacia physical care of the children knowing that she intends to remove them from their roots and the wellspring of their emotional stability is inconsistent with the best interest of the children. Thus, the Court believes that a shared care arrangement is consistent with the first *Hansen* factor.

The second *Hansen* factor is the ability of the parents to communicate and show mutual respect. Under this factor, the Court is looking for evidence of "lack of trust," controlling behavior, "domineering attitude," hostility, and domestic abuse. When such evidence exists, it may pose a significant impediment to effective co-parenting.

. . . .

A single incident of domestic abuse does not necessarily establish a "history of domestic abuse" under section 598.41(3)(j). *In re Marriage of Forbes*, 570 N.W.2d 757, 760 (Iowa 1997). The greater weight of the credible evidence demonstrates that both Ryan and Stacia have called the other inappropriate names. Most certainly, Ryan was verbally abusive to Stacia with his name-calling. Likewise, both parties have been aggressive toward the other. Each has lost control of his or her emotions. Neither party was completely willing to acknowledge these shortcomings from the witness stand. The court cannot conclude that a history of domestic abuse has been shown in this case.

Some, but not all, of the conflict between the parties occurred as their marriage was crumbling and one or both of them felt powerless to control the breakdown. Their occasional improper conduct should not "trump the overall parenting characteristics" of the parties exhibited over several years. . . .

. . . .

Since the parties separated, they have been able to manage the affairs of the children quite well. For the most part, Stacia and Ryan communicate by email about the children. . . . For the majority of their married life, both before and after children, Ryan

and Stacia effectively communicated and demonstrated mutual respect, love, and loyalty to each other. The court believes they will revert to this pattern of behavior in short order once a final decree of dissolution of marriage is entered. Under the second *Hansen* factor, shared care can work for the Meierotto children.

The third *Hansen* factor is the degree of conflict between the parties. A history of discord between the parents suggests that joint care is not likely to work. This is because of the "substantial and regular interaction" required of parents in a shared-care arrangement. 733 N.W.2d at 698-99. A consideration under this factor must be whether one parent objects to shared care. Here, Stacia objects to shared care. Our appellate court has ruled that one parent may not exercise veto power over whether a court grants shared care. *In re Marriage of Bolin*, 336 N.W.2d 441, 446 (Iowa 1983). Yet, a lack of mutual acceptance of joint physical care can be an indicator of instability in the relationship of the parents that may impair the successful exercise of shared physical care.

For the majority of Stacia and Ryan's [eight-]year marriage, they enjoyed a good, healthy marriage. There is no extended history of marital discord. Stacia's resistance to a shared-care arrangement is based in some measure, but not exclusively, on her decision to remarry and relocate. In the court's judgment, a shared-care arrangement is consistent with the third *Hansen* factor.

The final *Hansen* factor is the degree to which the parents are in general agreement about their approach to daily matters. The court is looking for evidence of agreement about child-rearing practices such as discipline, academic performance, and values. Parents must generally be operating from the "same page on a wide variety of routine matters" to maximize the likelihood that a joint physical care arrangement will succeed. Here, the parties have been able to consistently agree on child care, preschool, discipline, participation in extracurricular activities, the importance of regular contact with extended family, and other important issues. Significantly, the parties agreed that the children should attend the Danville School System. Ryan testified that he would purchase a home in the Danville School District so that the children could attend school there.

The court concludes that a shared-care arrangement is consistent with all four *Hansen* factors. In the court's opinion, a shared-care arrangement is the custody arrangement that will maximize the physical, emotional, and social best interests of the children.

On appeal, Stacia emphasizes she was the primary caregiver and this

factor should have been given greater weight. We acknowledge Stacia was the

primary caregiver—particularly when she was not employed outside the home. However, that arrangement does not require an award of physical care to Stacia because this is but one factor to be considered. The ultimate objective is to place the children in the environment most likely to bring them to healthy physical, mental, and social maturity. *Hansen*, 733 N.W.2d at 695. The trial court provided cogent and convincing reasoning and arrived at a child custody decision that was in the children's best interests. Further commentary by this court would serve no useful purpose. We affirm the decree order placing the children in the parties' joint physical care.

**AFFIRMED.**