**IN THE COURT OF APPEALS OF IOWA**

No. 15-1662
Filed November 9, 2016


**IN RE THE MARRIAGE OF CHRISTOPHER C. REMREY
AND SHIRLEE S. REMREY**

**Upon the Petition of
CHRISTOPHER C. REMREY,**
       Petitioner-Appellee,

**And Concerning
SHIRLEE S. REMREY,**
       Respondent-Appellant.
_____

       Appeal from the Iowa District Court for Clinton County, Mark R. Lawson,

Judge.



       A mother appeals the district court decision granting the father physical

care of the parties' children.  **AFFIRMED.**




       Matthew L. Noel of Mayer, Lonergan & Rolfes, Clinton, for appellant.

       Judd J. Parker of Parker Law Office, Clinton, for appellee.




       Heard by Vaitheswaran, P.J., and Potterfield and Bower, JJ.

**BOWER, Judge.**

Shirlee Remrey appeals the district court decision granting Christopher Remrey physical care of the parties' children. We agree with the court's finding Shirlee was not a credible witness. Shirlee has also not shown there was a history of domestic abuse during the parties' marriage. We affirm the district court's decision placing the children in Christopher's physical care.

## I. Background Facts & Proceedings

The parties married in 2005. Shirlee had two children from a previous relationship who lived with the parties.[1] The parties had three children during the marriage, born in 2006, 2009, and 2014. Christopher is employed as the catering manager at a Hy-Vee Store, where he has annual income of about $32,000. Shirlee did not work outside the home until after the parties separated, when she obtained a job which provides her an annual income of about $15,468.

On about January 10, 2015, Shirlee left the home with the parties' children and moved in with Jaimee Bailey. On January 23, 2015, Shirlee filed a petition for a protective order pursuant to Iowa Code chapter 236 (2015), stating Christopher had threatened and intimidated her and the children during the time the parties were separating. An order was entered prohibiting contact between Christopher and Shirlee. Shirlee told Jaimee "she would do what she needed to do to keep the children from Chris." Shirlee had a falling out with Jaimee and moved out on or about February 4, 2015.

Shirlee and her children were essentially homeless for a short period of time, staying first at a shelter, then with Shirlee's mother, then with a friend,

---

[1] The older of these two children is now an adult.

Tonya Templeton. Shirlee told Tonya in front of the children that Christopher "was evil and that, well, she hated him and she wanted him to die, and she was going to do everything she could to ruin him." Christopher agreed to move out of the marital home so Shirlee and the children would have a place to live. On February 16, 2015, Shirlee decided to leave Tonya's home, and she and the children moved back to the marital home.

Christopher filed a petition for dissolution of marriage on February 19, 2015. On March 27, 2015, Christopher was found to be in contempt of the no-contact order for communicating with Shirlee through a third person.[2] A temporary order placed the children in Shirlee's physical care. Christopher was granted visitation on alternating weekends, alternating holidays, and two weeks in the summer. On occasion, while Christopher had the children, Shirlee would call the police and ask to have them check the children. Also, Christopher was investigated twice by the Iowa Department of Human Services (DHS), and both reports were returned unfounded.

The dissolution hearing was held in August 2016. At the beginning of the hearing, Christopher stated he was seeking joint physical care of the children. Shirlee, who was seeking physical care, was reluctant to disclose where she was living, stating "I don't want [Christopher] to come out there harassing us." The court pointed out Shirlee had recently been homeless and stated if Shirlee wanted the court to consider her living conditions, rather than considering her to be homeless, she would need to tell the court. After a brief recess, Shirlee

---

[2] Christopher left an innocuous note about having paid some bills on a white board in the marital home and communicated with Shirlee through one of the children about she and the children returning to the marital home.

testified she was moving to a home in Mechanicsville, which was about a one hour drive from Clinton, where Christopher lived. In chambers, the court told the parties the fact Shirlee had moved outside the area made joint physical care impossible. Christopher then requested physical care of the children.

The district court issued a dissolution decree placing the children in Christopher's physical care. The court found Shirlee was not a credible witness, stating, "Her answers were glib and flippant, and were delivered without genuine emotion." The court noted Shirlee's testimony was in direct contrast to the testimony of other witnesses. The court found Shirlee was incapable of supporting Christopher's relationship with the children, finding she had reported him to the police and other authorities in an attempt to undermine his parenting. On the other hand, Christopher had taken steps to improve his parenting skills by taking parenting classes, and he had attended to the children's educational needs. The court determined Christopher would attempt to foster a good relationship between Shirlee and the children. The court found "there is no history of domestic abuse in this case." Shirlee was granted visitation one evening each week, alternating weekends, alternating holidays, and four weeks in the summer. Shirlee was ordered to pay child support for the children. Shirlee now appeals the physical care provision in the dissolution decree.

## II. Standard of Review

Our review in dissolution cases is de novo. Iowa R. App. P. 6.907; *In re Marriage of Fennelly*, 737 N.W.2d 97, 100 (Iowa 2007). We examine the entire record and determine anew the issues properly presented. *In re Marriage of*

*Rhinehart*, 704 N.W.2d 677, 680 (Iowa 2005). We give weight to the factual findings of the district court but are not bound by them. *In re Marriage of Geil*, 509 N.W.2d 738, 741 (Iowa 1993).

### III. Physical Care

Shirlee claims the district court should have granted her physical care of the parties' children because there was a history of domestic abuse during the parties' marriage. She relies on Iowa Code section 598.41(2)(c), which provides, "A finding by the court that a history of domestic abuse exists, as specified in subsection 3, paragraph '*j*,' which is not rebutted, shall outweigh consideration of any other factor specified in subsection 3 in the determination of the awarding of custody under this subsection." Section 598.41(3)(j) provides one of the factors in determining physical care is "[w]hether a history of domestic abuse, as defined in section 236.2, exists."

Evidence of domestic abuse creates a rebuttable presumption; it does not automatically preclude a party from having physical care of children. *See In re Marriage of Ford*, 563 N.W.2d 629, 632 (Iowa 1997). "In interpreting what is sufficient to constitute a 'history of domestic abuse,' we find that a 'history' is not necessarily established by a single documented incident . . . ." *In re Marriage of Forbes*, 570 N.W.2d 757, 760 (Iowa 1997). "Nor does more than one minor incident automatically establish a 'history of domestic abuse.'" *Id.* "It is for the court to weigh the evidence of domestic abuse, its nature, severity, repetition, and to whom directed, not just to be a counter of numbers." *Id.*

The district court considered the evidence of domestic abuse in this case and found:

> In making this determination, the Court considers that a domestic abuse protective order has been entered. In addition, the Court notes that Chris was found in contempt and was given a four-day suspended jail sentence for having indirect contact with Shirlee in violation of the protective order. The Court notes that neither the allegations in the petition nor the statements made in support of the contempt application reference assaultive behavior against Shirlee. The Court does not find this one incident arises to a "history" of domestic abuse assault. There is at least some evidence this protective order was obtained in part to put a stop to the shared custody arrangement the parties had been exercising. While the Court does not downplay the entry of a protective order, this fact does not overwrite the concerns the Court has with Shirlee as addressed above. In the affidavit alleging contempt, Shirlee makes many of the same claims that have been found not to be credible in this opinion. There is simply no credible evidence that Chris had anyone stake out Shirlee's home or damage her car. One of the third-party contacts that led to the contempt finding was Chris's attempt - through [a child] - to contact Shirlee and offer his residence as a home for her and the children. The Court finds there is no history of domestic abuse in this case.

We agree with the district court's conclusions. Shirlee's petition for a protective order alleged Christopher had engaged in threats and intimidation; she did not allege any incidents of physical abuse. Although it is not entirely clear from the contempt order, it appears Christopher was found to be in contempt for contacting Shirlee's adult child to tell him Christopher was willing to move out of the marital home so Shirlee and the children would have a place to live and then leaving a message on a white board in the home telling Shirlee which bills had been paid. The chapter 236 proceedings do not show a "history" of domestic abuse.

During the dissolution trial, Shirlee testified Christopher made her feel like a prisoner in the home. She stated she could not go out without Christopher knowing what she was doing; he sabotaged her relationship with her family, and did not allow her to work outside the home. She also testified Christopher had "continuously stalked me, harassed me, badgered me."

We agree with the district court's finding Shirlee's statements are not credible. At times, Shirlee contradicted her own testimony. Although she stated she was a like a prisoner in the home, she also testified she had been taking classes for several years. Shirlee's cousin, Tiffany Jacobsen, testified she and Shirlee sometimes had "mom's night out," and Christopher would watch the children. Tiffany testified Christopher "would offer to let her have a little break because, 'You work really hard. Why don't you go out and spend a little time with your cousins? And I'll take the kids.'" Shirlee did not present any evidence, beyond her own testimony, to support her allegations Christopher had continuously stalked, harassed, or badgered her. In light of our finding that Shirlee is not a credible witness, we determine she has not shown a history of domestic abuse.

We conclude the district court properly granted physical care of the parties' children to Christopher. The evidence shows Christopher is more stable. In addition, Christopher testified he was taking a series of parenting classes because he wanted to improve his parenting skills. Christopher has attended to the children's educational needs and plans to enroll them in a school about a block from his home. The evidence shows Christopher is much more likely to

support the children's relationship with Shirlee than Shirlee would be to support their relationship with him. Shirlee attempted to undermine Christopher's relationship with the children by calling the police and DHS to make unsubstantiated claims while the children were in his care. We also concur in the district court's finding, "Shirlee seems to invite conflict with virtually everyone who comes in contact with her."[3]

We affirm the decision of the district court.

**AFFIRMED.**

---

[3] Shirlee presented a history of conflict with Christopher, housemates, and the school. When an argument or misunderstanding occurred Shirlee would move out or withdraw the children from public school and "homeschool" them for a period of time.