# IN THE COURT OF APPEALS OF IOWA

No. 21-1165
Filed June 15, 2022

IN RE THE MARRIAGE OF JACQUELINE MARIE ENGELMAN
AND AARON F. ENGELMAN

Upon the Petition of
JACQUELINE MARIE ENGELMAN,
     Petitioner-Appellant/Cross-Appellee,

And Concerning
AARON F. ENGELMAN,
     Respondent-Appellee/Cross-Appellant.
_____

Appeal from the Iowa District Court for Boone County, James C. Ellefson, Judge.

Jacqueline Engelman and Aaron Engelman appeal from the decree dissolving their marriage. **AFFIRMED AS MODIFIED.**

Mark R. Hinshaw of The Law Offices of Mark R. Hinshaw, West Des Moines, for appellant.

Nicole S. Facio of Newbrough Law Firm, LLP, Ames, for appellee.

Heard by May, P.J., and Greer and Chicchelly, JJ.

**MAY, Presiding Judge.**

Jacqueline (Jackie) Engelman appeals from the decree dissolving her marriage to Aaron Engelman. Jackie claims the district court should have awarded her traditional spousal support and should not have granted joint legal custody of the couple's children. Aaron cross-appeals, arguing the district court abused its discretion by granting Jackie trial attorney fees. We affirm as modified.

**I. Background Facts & Proceedings**

Jackie and Aaron met during their senior year of high school and married shortly afterwards. At the time of their marriage in fall 2003, Aaron was in basic training for the U.S. Army and Jackie was taking some classes at DMACC. Then they both moved to Hawaii for Aaron's first Army assignment. Aaron was deployed to Afghanistan a few months later. While Aaron was overseas, Jackie came back to Iowa to live with her parents. When Aaron returned from deployment, he and Jackie again moved to Hawaii and had their first child. But Aaron's Army career kept their family on the move. They moved to Okinawa, Japan not long after arriving in Hawaii. In the years that followed, the family moved (in various sequences) to military installations in Arizona, Florida, and Massachusetts. They had a second child, too. During this period, it was common for Jackie to return to Iowa with the children in the summertime to be near family. Due to the frequent moves, the parties lived together only about half the duration of their marriage.

When Jackie and Aaron were living together, their relationship was not always stable. Sometimes, their interactions turned violent. While living in Arizona in 2011, Aaron testified he threw Jackie backwards because she had jumped on his back during an argument. Jackie testified that Aaron had grabbed her throat

and strangled her because he was angry she wouldn't have sex with him. According to Jackie, Aaron regularly pressured Jackie for sex, or to engage in sex acts Jackie wasn't comfortable with.

Things came to a head in late 2017. After a night of heavy drinking, Aaron kicked Jackie and their children out of their military housing in Arizona. Jackie testified that Aaron was demanding sex, which she refused. Aaron testified he cannot remember what began the argument, but he could remember telling Jackie and the children to leave. A few months later, Jackie and the children left Arizona and did not return.

Jackie moved in with her parents in Iowa. Jackie had not held a job for any meaningful length of time during the marriage, but she was able to find work cleaning and working at a garden center. Jackie later found her current job working as a special education teacher's aide in a public school. Altogether, she makes about $18,000 per year. Meanwhile, Aaron continued his work in the military. His annual gross pay is just under $94,000 per year, although about a third of Aaron's income is not taxable. Aaron testified he plans to retire from the military in 2023 and return to the civilian workforce in Iowa.

After about two years of separation, Jackie filed this dissolution action in May 2020. The parties proceeded to trial in June 2021. Relevant to this appeal, the district court declined to grant Jackie spousal support because "[t]he 'life patterns' and 'economic consequences' in this case do not support" such an award. The district court also found, over Jackie's objection, there was no history of domestic abuse and ordered joint legal custody of the couple's children. Finally, the district court ordered Aaron to pay $6000 in attorney's fees to Jackie.

Jackie appealed, and Aaron cross-appealed.

## II. Standard of Review

Dissolution proceedings are reviewed de novo. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). However, we afford deference to the district court's factual findings, "particularly when considering the credibility of witnesses, but we are not bound by them." *In re Marriage of Fox*, 559 N.W.2d 26, 28 (Iowa 1997). So "we accord the trial court considerable latitude in" determining spousal support. *In re Marriage of Benson*, 545 N.W.2d 252, 257 (Iowa 1996). We will only "disturb the district court's 'ruling only when there has been a failure to do equity.'" *McDermott*, 827 N.W.2d at 676 (citation omitted).

## III. Discussion

Jackie argues the district court should have granted her traditional spousal support and should not have granted joint legal custody for the children. In his cross-appeal, Aaron asserts the $6000 awarded to Jackie for trial attorney's fees was not equitable.[1] We consider the issues in turn.

### A. Spousal Support

We first address Jackie's appeal for spousal support. She requests $2000 per month for the remainder of her life. Spousal support is not awarded as a matter of right and is instead awarded at the district court's discretion. *In re Marriage of Mann*, 943 N.W.2d 15, 20 (Iowa 2020). "The district court has 'considerable

---

[1] Aaron also requests "an additional award of personal property," relating to two computer hard-drives he asserts remain with Jackie. Jackie does not resist Aaron's request for the hard-drives and represents in her reply-brief she will return them within ninety days of filing her reply-brief. And at oral argument, Aaron's counsel indicated the personal property division was a non-issue. So we assume the issue is resolved and do not comment further.

latitude' in fashioning or denying an award of spousal support." *Id.* (citation omitted). The court's decision whether to award spousal support turns on the particular facts of each case. *Id.* However, Iowa Code section 598.21A(1) (2020) lays out specific criteria for the court to consider. Those factors are:

> a. The length of the marriage.
> b. The age and physical and emotional health of the parties.
> c. The distribution of property made pursuant to section 598.21.
> d. The educational level of each party at the time of marriage and at the time the action is commenced.
> e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.
> f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.
> g. The tax consequences to each party.
> h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.
> i. The provisions of an antenuptial agreement.
> j. Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21A(1).

We have long recognized three types of spousal support: rehabilitative, reimbursement, and traditional. *In re Marriage of Pazhoor*, 971 N.W.2d 530, 539 (Iowa 2022).

> *Rehabilitative alimony* serves to support an economically dependent spouse through a limited period of education and retraining. Its objective is self-sufficiency. An award of *reimbursement alimony* is predicated upon economic sacrifices made by one spouse during the marriage that directly enhance the future earning capacity of the other. *Traditional alimony* is payable for life or for so long as a dependent spouse is incapable of self-support. The amount of

alimony awarded and its duration will differ according to the purpose it is designed to serve.

*Id.* (citation omitted). "We allow hybrid awards designed to accomplish more than one of the foregoing goals." *Id.* And recently, our supreme court formally recognized transitional support as a fourth type of spousal support. *Id.* "Transitional [spousal support] can ameliorate inequity unaddressed by the other recognized categories of support. Divorcing spouses must adjust to single life. If one is better equipped for that adjustment and the other will face hardship, then transitional [support] can be awarded to address that inequity and bridge the gap." *Id.* at 542.

In this case, the district court denied Jackie's request for traditional spousal support at $2000 per month. Jackie requests the same on appeal. Traditional support is typically awarded after long-term marriages where life patterns and future earnings are predictable. *Id.* at 543. Although there is no hardline durational threshold, we generally consider traditional support for marriages lasting twenty or more years. *Id.* Yet even in marriages of sufficient duration, we only award traditional support where there is a need for it by one party and the other party has the ability to pay. *Id.*

Although dissolution cases are highly fact-dependent and usually provide little precedential value, we are struck by the similarities here to a recent case decided by this panel, *In re Marriage of Moss.* No. 21-0307, 2022 WL 1232619 (Iowa Ct. App. Apr. 27, 2022). *Moss* involved a spouse who could not progress in a chosen career for many years because her husband's military career required them to relocate frequently. *Id.* at *1. Like this case, the wife in *Moss* also

requested traditional spousal support, even though their marriage fell "short of the twenty-year benchmark." *Id.* at *5. We were concerned the paying-spouse in *Moss* could be required to pay spousal support "many years longer than their marriage lasted." *Id.* Instead, we awarded the non-paying spouse in *Moss* transitional spousal support because "[s]he ha[d] the capacity for self-support, but she ha[d] insufficient income to liquid assets to transition to single life without undue hardship." *Id.* We think a similar approach would do equity in this case.

Accordingly, we decline to award Jackie traditional spousal support. While this marriage is closer to our usual threshold for traditional spousal support, the couple still fell short of the benchmark. *But see Pazhoor*, 971 N.W.2d at 543 (noting that a marriage of twenty years or more is not required). And additional factors weigh against a traditional support award. Both Jackie and Aaron are relatively young, and we are concerned that a standard award of traditional support would leave Aaron to pay support for many years longer than the marriage lasted. *See Moss*, 2022 WL 1232619, at *5. Plus, in light of Jackie's present disinterest in pursuing a higher-wage career or educational prospects, we agree with the district court that Jackie "is not meeting her obligation to earn up to her [earning] capacity."

But we acknowledge Jackie's argument that the district court's failure to award *any* spousal support will result in financial hardship as she establishes her single life. So we think Jackie is a good candidate for transitional support. Jackie has undoubtedly put her career prospects on hold to accommodate the transient nature of Aaron's employment and the demands of raising children. Even now, Jackie currently does not work full time at either the school or garden center. So

an award designed to help transition Jackie back into full-time employment and self-support seems most likely to do equity while avoiding undue hardship for either party. *See Pazhoor*, 971 N.W.2d at 539–40. Plus, an award of transitional support will provide Jackie the means to pursue an education and increase her earning capacity should she elect to do so. So in order to give Jackie a solid footing in the workforce and the ability to obtain new training, we modify the district court's dissolution decree to award Jackie $1000 per month for a period of sixty months in transitional spousal support.

### B. Legal Custody

Next, Jackie claims Aaron's history of domestic abuse should prevent him from receiving legal custody of the children. When "a history of domestic abuse exists, a rebuttable presumption against the awarding of joint custody exists." Iowa Code § 598.41(1)(b). To determine if there is a history of domestic abuse, our consideration includes, but is not limited to the

> commencement of an action pursuant to section 236.3, the issuance of a protective order against the parent or the issuance of a court order or consent agreement pursuant to section 236.5, the issuance of an emergency order pursuant to section 236.6, the holding of a parent in contempt pursuant to section 664A.7, the response of a peace officer to the scene of alleged domestic abuse or the arrest of a parent following response to a report of alleged domestic abuse, or a conviction for domestic abuse assault pursuant to section 708.2A.

*Id.* § 598.41(3)(j).

A "history" of domestic abuse "is not necessarily established by a single documented incident." *In re Marriage of Forbes*, 570 N.W.2d 757, 760 (Iowa 1997). "Nor does more than one minor incident automatically establish a 'history of domestic abuse.'" *Id.* (citation omitted). "It is for the court to weigh the evidence

of domestic abuse, its nature, severity, repetition, and to whom directed, not just to be a counter of numbers." *Id.*

The evidence of domestic abuse was contested at trial. While Aaron admitted to the 2011 incident where he claims he threw Jackie during an argument, he denied ever forcing Jackie into sex. The district court ultimately determined that the "evidence as a whole [did] not show a history of domestic abuse by a preponderance of the evidence."

Following our de novo review of the record, and giving proper deference to the district court's implicit credibility findings in Aaron's favor, we agree that the evidence does not establish a history of domestic abuse. Moreover, we also conclude that "even if we did find a history of domestic abuse existed in this case, the presumption created by section 598.41(1)(b) against awarding joint custody has been rebutted." *Id.* Certainly Aaron has not always been the model spouse or parent. But recently Aaron has shown a commitment to addressing his mental health by regularly seeing a counselor. And Aaron has made genuine efforts to connect with the children despite being geographically separated. All things considered, we think the district court properly ordered joint legal custody.

### C. Trial Attorney Fees

Finally, Aaron argues the district court abused its discretion by granting Jackie $6000 in trial attorney fees. "Whether attorney fees should be awarded depends on the respective abilities of the parties to pay." *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006) (citation omitted). "[A]n award of attorney fees rests in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." *In re Marriage of Francis*, 442 N.W.2d 59, 67 (Iowa

1989). Because of the disparity in income between the parties and Aaron's ability to pay, we cannot say the trial court abused its discretion in awarding Jackie attorney fees. So we affirm.

## IV. Conclusion

We modify the district court dissolution decree to award Jackie transitional spousal support of $1000 per month for sixty months. We affirm the district court's legal custody determination and award of trial attorney fees.

**AFFIRMED AS MODIFIED.**