# IN THE COURT OF APPEALS OF IOWA

No. 24-0780
Filed May 7, 2025

**AVERY ROGER BIRCHARD,**
    Plaintiff-Appellant,

**vs.**

**APRIL RENEE MARTIN,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Calhoun County, Amy M. Moore, Judge.

A father appeals the district court's ruling granting physical care of the parties' minor child to the mother. **AFFIRMED AS MODIFIED AND REMANDED.**

Dani L. Eisentrager, Eagle Grove, for appellant.

April Renea Martin, Truman, Minnesota, self-represented appellee.

Considered without oral argument by Tabor, C.J., and Ahlers and Sandy, JJ.

**AHLERS, Judge.**

Avery Birchard and April Martin are the parents of a child born in 2019. When the parties' romantic relationship ended, the mother moved to Minnesota—about one hour and forty-five minutes away from the father. The father filed this action seeking to establish custody and resolve related issues. The district court entered a temporary order giving the parents joint legal custody and granting the father physical care of the child. The mother received supervised visitation.

About nine months after entry of the order on temporary matters, the district court conducted a trial and then issued a final ruling. The district court ruling resolved all issues presented. As relevant to this appeal, the court granted the parents joint legal custody of the child and granted the mother physical care. The father appeals. He contends he should have been awarded sole legal custody and physical care of the child. He also asks us to order the mother to pay his appellate attorney fees.

We review child-custody and physical-care determinations de novo. *Callender v. Skiles*, 623 N.W.2d 852, 854 (Iowa 2001); *Randall v. Trier*, 15 N.W.3d 809, 813 (Iowa Ct. App. 2024). With de novo review, we give weight to the district court's fact findings, especially as to witness credibility, but we are not bound by them. *Randall*, 15 N.W.3d at 813.

## I.    Legal Custody

We first address the father's challenge to the district court granting the parents joint legal custody. The father challenges this determination, asserting he should be granted sole legal custody. In determining custody, our "first and governing consideration" is the best interests of the child. Iowa R. App.

P. 6.904(3)(n). In making the legal-custody determination, we look to the non-exclusive factors listed in Iowa Code section 598.41(3) (2023). *See* Iowa Code § 600B.40(2) (stating that section 598.41 applies to children born to never-married parents); *In re Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007). We also consider the presumption against joint legal custody when there is a "history of domestic abuse." Iowa Code § 600B.40(2); *see also id.* § 598.41(1)(b). The father relies heavily on this presumption in challenging the district court's grant of joint legal custody.

The district court thoroughly reviewed the statutory factors in arriving at the decision to grant the parents joint legal custody. Following our de novo review, we generally agree with the district court's reasoning and see no significant benefit to repeating it.

We also agree with the district court's assessment of the evidence in rejecting the father's argument that he should have legal custody based on his claim of a history of domestic abuse perpetrated by the mother. As a starter, we note the father's claim is based primarily on one episode, and one episode of domestic abuse does not necessarily establish a "history of domestic abuse." *See In re Marriage of Forbes*, 570 N.W.2d 757, 760 (Iowa 1997). And even if there was more than one minor episode, that also does not automatically constitute a "history of domestic abuse." *Id.* Instead of counting numbers, we look to the nature, severity, and repetition of the abuse. *Id.*

Here, while the father obtained a protective order against the mother pursuant to Iowa Code chapter 236, the district court found that the father utilized the protections of chapter 236 "as a sword, and not a shield." In reaching that

conclusion, the district court pointed to the fact that the father lived in the same home with the mother for several months after the episode that formed the basis for obtaining the protective order and only sought the order long after the parties separated and the mother moved out of state. The court also noted the father's testimony that, by obtaining the protective order, he was "just protecting [his] rights as the father" to try to gain an advantage in the event the mother filed a custody action in Minnesota. Finally, the district court found "both parties engaged in aggressive and assaultive behaviors during their relationship." After our de novo review, we agree with these findings by the district court and find there is no history of domestic abuse that triggers any presumption on legal custody.

Considering the entire record de novo, we reach the same conclusion as the district court that the parties should have joint legal custody of the child. We affirm on this issue.

## II. Physical Care

Iowa Code section 598.1(7) defines "physical care" as "the right and responsibility to maintain a home for the minor child and provide for the routine care of the child." The district court granted that right and responsibility to the mother. The father challenges that decision.

We start our analysis of the father's challenge by noting that neither parent asked for joint physical care. Besides the lack of a request, we agree with the district court that the distance between the parents makes joint physical care unworkable even if a parent had requested it. So, we must decide which parent should be granted physical care. Physical-care decisions are made by looking at the factors set forth in section 598.41(3) and addressed in our case law. *See*

*Hansen*, 733 N.W.2d at 696–700; *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). The factors do not receive equal weight, and the weight ultimately assigned to any factor depends on the particular facts of the case. *In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). In assessing the factors, the "ultimate objective . . . is to place the child in the environment most likely to bring [the child] to healthy mental, physical, and social maturity." *McKee v. Dicus*, 785 N.W.2d 733, 737 (Iowa Ct. App. 2010).

While we agree with much of the district court's analysis of the factors for making the physical-care determination, on our de novo review, we weigh some of those factors differently, consider other factors, and ultimately come to a different conclusion. We agree with the district court that both parents are suitable caregivers for the child and both have actively cared for the child throughout the child's life. While the mother primarily shouldered this load when the parents were together, the father still carried a fair share of it. And since the temporary order was issued granting him physical care, he has demonstrated the clear ability to shoulder the load the mother previously carried.

We also agree that both parents, like all parents, have their shortcomings. Here, both parents have struggled with abusing legal and illegal substances. Both have used physical aggression toward the other when disputes arise. In our view, these shortcomings offset such that neither parent gains ground on the physical-care determination because of them.

We also agree with the district court that the parents co-parented well when they first separated. And we agree that such cooperation largely stopped when the mother moved to Minnesota, not necessarily because of the move, but

because the father engaged in a scorched-earth tactic of taking the child, refusing to return the child to the mother, and getting a chapter 236 protective order for the primary purpose of gaining the upper hand in the ensuing custody battle. Like the district court, we condemn this behavior by the father, as it reflects poorly on his ability to support the mother's relationship with the child—one of the factors in determining physical care. *See* Iowa Code § 598.41(3)(e). But we conclude that other factors outweigh this concerning conduct from the father.

If we only considered the above factors and weighed them about the same as the district court, we would affirm the decision to grant physical care to the mother. But we find other factors—either those not considered by the district court or, if considered, not given the weight we find they deserve—dictate a different outcome. Of particular concern is the mother's sudden move to Minnesota and her enigmatic relationship with her current husband.

The mother moved out of the family home in Iowa in March 2023 and moved in with her mother, who lives near the family home. Within a few weeks, the mother met a man through an online dating site. She met him in person for the first time on April 29, and then "on a whim," as she described it, moved to Minnesota to live with him shortly thereafter. They married on June 9. The fast progression of the relationship is not what causes concern. What causes us concern is that the mother seeks to bring her young child into a home with this man about whom she seems to know little. And the information she does know is alarming. When asked how many children her husband has, she responded, "Three, I believe." She went on to testify that her husband only sees two of those children, and none of those visits take place at the home of the mother and her husband. In fact, the mother

has never even met her husband's children. While there may be innocent explanations as to why her husband never has his children with him in his own home, there may be not so innocent reasons as well. We simply don't know, and it is concerning that the mother didn't provide any explanation. When pressed for details, she repeatedly avoided the questions by saying she doesn't get involved in her husband's life with his children or questioned why it was relevant. Of course, when the mother seeks to have a young child placed with her to live in a house with her husband, details about the husband are a relevant and significant factor. *See In re Marriage of Thraen*, No. 08-0924, 2009 WL 249696, *3 (Iowa Ct. App. Feb. 4, 2009) ("When a parent seeks to establish a home with another adult, that adult's background and his or her relationship with the children becomes a significant factor in a custody dispute."). The mother's failure or refusal to provide any details about her husband's background or relationship with the mother's child is a significant factor weighing against granting her physical care of the child.

In addition to providing no meaningful information about her husband, the mother also presented no information about a plan for taking care of the child in terms of his schooling or medical treatment. While this is important in all cases, it is particularly important here, as the child has educational and medical challenges related to his speech that are being addressed in Iowa when the child is with the father. The child's preschool teacher testified to the improvement the child had made in his speech when he started the school year in the fall of 2023 after being in the father's care over the summer and to the improvement he made over the course of the school year (the teacher testified at the trial conducted in April 2024). The teacher's testimony was important in establishing that the father has met the

child's needs while in his care, but it was important in another way. The teacher testified that both parents and extended family were involved in getting the child to and from school the prior school year, but she had not seen or heard from the mother the following school year. This evidence suggests the mother has prioritized her new life in Minnesota over taking an active role in the child's life, further supporting granting the father physical care.

Another important factor in this case is the presence of extended family near the father. The child's maternal grandmother and paternal great-grandmother live near the father's home in Manson. Both are and have been actively involved in caring for the child by providing daycare, picking up from or dropping off at school, et cetera. The mother presented no evidence of any support system in Minnesota. While a support system is not required to care for a child, it adds value to the child's life when present. This is another factor in favor of granting the father physical care.

Finally, we note that the mother has failed to pay ordered child support. She offered no evidence establishing that she was not able to pay. The evidence establishing the mother's failure to pay child support is additional evidence suggesting the mother's priorities have shifted from the child to other things.

After considering the relevant factors on our de novo review, we weigh some of the factors differently than the district court and consider some the district court did not address. After doing so, we conclude it is in the child's best interests to grant physical care to the father rather than the mother.

We affirm the district court's ruling granting the parties joint legal custody, but we modify it to grant the father physical care of the child and strike the provision

requiring the father to pay child support. We remand to the district court to establish the mother's visitation schedule, her child-support obligation, obligations for medical support, and tax dependency exemptions. The district court has the discretion to make these determinations on the existing record or conduct a hearing to take additional evidence, as the court deems appropriate with or without input from the parties.

## III. Appellate Attorney Fees

The father requests that we order the mother to pay his appellate attorney fees. Iowa Code section 600B.26 permits such an award to the prevailing party in an action to determine custody or visitation under chapter 600B. Awarding appellate attorney fees to the prevailing party is permitted at our discretion but not as a matter of right. *Hensch v. Mysak*, 902 N.W.2d 822, 827 (Iowa Ct. App. 2017). In determining whether to award appellate attorney fees, we weigh the needs of the prevailing party, the other party's ability to pay, and whether the party was obligated to defend the district court's decision on appeal. *Id.* As the prevailing party, the father is eligible for an appellate attorney fees award. But weighing his needs against the mother's ability to pay, we do not find an award of appellate attorney fees to be equitable. Accordingly, we deny the father's request for appellate attorney fees.

**AFFIRMED AS MODIFIED AND REMANDED.**